S. W. DUTTON ET AL. V. STATE OF NEBRASKA, EX REL. H. E. PANKONIN, ET AL.

FILED NOVEMBER 20, 1894.   No. 7203.

1. **Bridges Across County Boundaries:** REPAIRS: MAN DAMUS TO COUNTY COMMISSIONERS: PRECINCT BONDS. "Louisville precinct," a political subdivision of Cass county, voted its bonds to aid in the construction of a free wagon bridge across the Platte river.   The county commissioners of Cass county issued the bonds voted, sold them and used the proceeds in constructing a free wagon bridge across the Platte river near the village of Louisville, in said county, and at a point where the river is the dividing line between the counties of Cass and Sarpy. The southern portion of the bridge became out of repair and unsafe for travel.   The county commissioners of Cass county were notified thereof by three taxpayers and citizens of said county and requested to repair the same.   The commissioners refused to make the repairs on the ground that it was not the duty of Cass county to keep such bridge in repair.   To compel the commissioners to repair the bridge said taxpayers instituted

proceedings in *mandamus*.   *Held*, (1) That as the statute makes
the middle of the main channel of the Platte river the boundary
line between the counties of Cass and Sarpy, the legal pre-
sumption is that the south half of such bridge is in Cass county,
and that it is the duty of the authorities of said county to keep
said portion of said bridge in repair, and that they would be
compelled to do so by *mandamus* proceedings instituted and car-
ried on by and in the name of said citizens and taxpayers; (2)
that said bridge is not the property of said " Louisville precinct; "
(3) that such bridge is the property of the public and a part of
the public highways of the state.

ERROR from the district court of Cass county.   Tried
below before CHAPMAN, J.

*H. D. Travis*, for plaintiffs in error.

*Beeson & Root*, for defendant in error.

*Byron Clark*, for intervenors.

RAGAN, C.

H. E. Pankonin and others, taxpayers and citizens of
Cass county, brought this action, a proceeding in *mandamus*,
against S. W. Dutton and others, the county commission-
ers of Cass county, Nebraska, in the district court of said
county to compel the respondents to repair the southern
portion of a free wagon bridge over the Platte river near
the village of Louisville, in said county.   The district
court rendered judgment, granting the peremptory writ of
*mandamus* as prayed, and the county commissioners prose-
cute to this court proceedings in error.   To reverse the
judgment of the district court counsel for the plaintiffs in
error makes the following arguments :

1.   There is no evidence to prove that the bridge in ques-
tion is in Cass county.   The evidence in the record is that
the bridge in question extends across the Platte river, and
that at the place where the bridge is located, Cass county
lies on the southern and Sarpy county on the northern side

of the Platte river.. The statute makes the middle of the main channel of the Platte river the boundary lines between said counties of Sarpy and Cass. (Compiled Statutes, secs. 10, 68, ch. 17.)

2. The second argument is that there was at the time of the construction of this bridge no public road running to the approaches of the bridge in either Cass or Sarpy counties; and that the county authorities never laid out a road connecting the bridge with the public highways on either side of the river. It appears that the bridge was not constructed immediately upon a section line or a public road, but that soon after its construction parties interested in having the public use this bridge purchased the strips of land lying between the approaches of the bridge and the public highways, and that a road was opened across the strip of land lying between the public highway and the southern end of the bridge, and this road was, by the supervisors of the road district in which the southern end of the bridge is situate, opened and worked, and the public have taken possession of the road so laid out and used it as a means of reaching the bridge. It would seem, then, that the public had acquired by dedication a public road across the strip of land between the regularly laid out public road and the southern termination of this bridge. (*State v. Otoe County*, 6 Neb., 129.)

3. That the evidence is not conclusive that it would take more than one hundred dollars to repair the bridge, and that the evidence is not sufficient to show that Cass county has funds on hand with which to pay for the reparation of the bridge. These arguments are wholly without merit and will not be further considered.

4. The fourth argument is that the relators have an adequate remedy at law. When a public road or bridge in any county shall be out of repair or be unsafe for travel any three citizens or taxpayers of the state may give notice to the county commissioners in which such bridge or road

is situate that the same is out of repair or unsafe for travel, and thereupon it becomes the duty of the county commissioners of the county in which such road or bridge is situate, within twenty-four hours after the service of such notice, to commence to make suitable repairs on said highway or bridge and place the same in safe condition for travel. (Compiled Statutes, secs. 114–116, ch. 78.)   In the case at bar we must presume that the south half or "the southern portion" of the bridge in controversy is in Cass county. The commissioners of that county were duly notified by three taxpayers and citizens of Cass county that the bridge in question was out of repair and unsafe for travel and requested to repair the same, or "the southern portion" thereof.   The commissioners refused to comply with the request made, not on the ground that the bridge was not out of repair or not in need of repairs, and not because they had not the funds with which to repair it, but on the ground that it was not the duty of Cass county, or their duty as the officers of such county, to make such repairs.   The act which the relators sought to have respondents perform was a public duty enjoined upon the latter by law, and one in which the people of the entire county were interested, and it was unnecessary for the relators, in order for them to maintain this action, to show that they had any interest in it other than that of mere private citizens interested in common with the public.   (*Hall v. People,* 57 Ill., 307.)

5. The final contention of counsel for the plaintiffs in error is that the bridge in question is not, and never was, the property of Cass county, but that the bridge belongs to "Louisville precinct," a political subdivision of said county.   It appears that in 1890 "Louisville precinct" voted $10,000 in bonds to aid in the construction of a free wagon bridge across the Platte river.   The county authorities of Cass county issued these bonds, sold them, and with the proceeds constructed the bridge in question and accepted it from the contractors; that the bridge since that time has

been used by the traveling public, and though it was not constructed immediately upon a public highway then existing, that it was, as already stated, soon after its construction, connected with public highways on either side of the Platte river by certain citizens purchasing the strips of land lying between the approaches of the bridge and the public highways and laying out or dedicating to the public roads across such strips of land. This bridge is not the property of "Louisville precinct." The bridge is the property of the public. "Louisville precinct" simply donated its bonds to aid in the construction of this bridge, and the county authorities of Cass county built the bridge using the donation of the precinct in aid thereof, and in so doing we must presume that the county authorities of Cass county were acting for and on behalf of that county. They were not compellable by law to construct this bridge even though its construction was desired by "Louisville precinct," and it voted its bonds in aid thereof. We hold, therefore, that since the law makes the middle of the main channel of the Platte river the boundary line between the counties of Cass and Sarpy, that the presumption is that the south half of this bridge is in Cass county, and that it is the duty of the authorities of that county to at all times keep and maintain the south half of said bridge in a safe condition for travel. The judgment of the district court to that extent is

AFFIRMED.