# CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

AT

## JANUARY TERM, 1906.

---

STATE, EX REL. WILLIAM SUMPTION ET AL., RELATORS, V. JOHN SMITH ET AL., RESPONDENTS.

FILED JUNE 20, 1906. No. 14,614.

1. **Repairs of county bridges** contemplated by sections 114 and 115 ch. 78, Comp. St., are such as may be made at once, and without considerable cost.

2. **Bridges: REPAIRS: MANDAMUS.** The boundary line between Colfax and Butler counties is the south bank of the Platte river, which flows between those counties. The bridge over the river between these counties was rebuilt in 1904 at a cost of about $22,000. In the following spring, by the movement of ice in the river, nearly one-half of the bridge was carried away. In an action of mandamus to compel the supervisors of Colfax county to repair the bridge, it is *held* that the action cannot be maintained without notice to both counties under section 116, ch. 78, Comp. St., and the counties must be joined in the action.

ORIGINAL application for a writ of mandamus to compel respondents, as county supervisors, to repair a bridge. *Writ denied.*

*George W. Wertz,* for relators.

*C. J. Phelps,* for respondents.

SEDGWICK, C. J.

The relators applied to this court for a writ of mandamus to compel the respondents, who are the supervisors

of Colfax county, to repair a bridge across the Platte river
between that county and Butler county, and to place the
same in condition for public travel, and to care for and
preserve the material of which said bridge was constructed.
The decision of the case is placed mostly upon propositions
of law, and for an understanding of the principles involved
the issues are sufficiently stated in the findings of fact.
The matter was referred to the Honorable John J. Sulli-
van to take the evidence and report findings of fact and
conclusions of law. His findings of fact are as follows:

"First. That the bridge in question was constructed in
the fall of 1904 at a cost of about $22,000. The bridge con-
sisted of 112 spans; 110 spans 24 feet long, and two spans
20 feet long. It was a pile bridge, the piles being from 16
to 32 feet in length, the average length of the piles being
24 feet. The height of the decking above the water was
between 7 and 8 feet. The piles were driven in the sand
and did not reach hardpan. During the outflow of ice in
the spring of 1905, 44 spans of the superstructure were en-
tirely carried away, and 75 piles were also carried away,
33 spans were more or less injured, leaving of the 112
spans only between 50 and 60 spans intact. To recon-
struct and repair the bridge so as to make it passable
would cost about $2,700. To restore it to its original con-
dition would cost about $5,000. This bridge (and its pre-
decessors) is on the public road extending from Colfax
county into Butler county, and is used chiefly by the citi-
zens of Butler county to reach the city of Schuyler. Here-
tofore the entire expense of building and repairing this
bridge and its predecessors has been borne by Colfax
county, Schuyler precinct, and the citizens of Schuyler. The
bridge was completely carried away during the outflow of
ice in the spring of 1883, and again in 1903, and parts of it
have been washed out and injured very frequently since
the construction of the original bridge in 1871. The per-
manency of this bridge, if restored to its original condi-
tion, depends entirely upon the character of the breakup
and outflow of ice in the spring. It might not stand for

more than a year, and it might stand for several years. This is a matter that is altogether problematical and cannot be determined in advance. Second. That the south bank of the Platte river is the dividing line between Butler and Colfax counties. The north end of the bridge is in Colfax county, and the south end of the bridge is in Butler county. Third. The bridge in question is the only bridge across the Platte river for a distance of 15 miles on either side. Fourth. There are sufficient available means at the disposal of respondents to enable them, after rebuilding and repairing all other bridges in the county that stand in urgent need of immediate reparation, to rebuild, reconstruct, repair and make passable that part of the Platte river bridge which was washed out and damaged in 1905. But, respondents have not sufficient means, after doing the immediately necessary work of reconstruction and reparation of smaller bridges, to reconstruct and repair the Platte river bridge in such a manner as to afford any reasonable expectation that the new structure would be permanent, or any persuasive probability that it would even withstand the next breakup and outflow of ice. Fifth. The refusal of respondents to rebuild and repair is not grounded upon or justifiable by the lack of means to make the bridge passable, but is, in part, grounded upon the lack of means to make it passable and probably permanent. They think it unwise and inexpedient to exhaust their available resources in the erection and reparation of a structure which according to the evidence might not stand for a year, and under the most favorable conditions would probably not stand for more than a few years. Sixth. Respondents had actual knowledge of the condition of the Platte river bridge long before this action was instituted, and they had refused to repair it, although frequently requested so to do by a large number of the citizens of Schuyler. Seventh. The notice mentioned in section 114, ch. 78, Comp. St. was given by relators to respondents before this action was commenced, but it does not appear that any such notice was ever given to the

county board of Butler county or to any member of that board."

The referee's conclusion of law upon these facts was: "First. That the duty to repair the Platte river bridge is a joint duty imposed by statute upon Butler county and Colfax county, and cannot therefore be enforced by mandamus without giving the notice required by section 116, ch. 78, Comp. St. Second. That the repairs contemplated by sections 114 and 115, ch. 78, Comp. St., are repairs of such a slight character that they may be made at once and without any considerable cost. Third. That the peremptory writ of mandamus should not be granted."

The reasons given by the referee in the opinion accompanying the report appear to justify the conclusions reached. They are as follows: "By section 87; ch. 78, Comp. St., the cost of building and maintaining bridges like the one here in question must be paid by the counties in which they are situate. The next section provides that the counties whose duty it is to build or repair any such bridge 'may be proceeded against jointly' for any neglect of duty in relation thereto. Sections 114, 115 and 116, ch. 78, Comp. St., provide that it shall be the duty of adjoining counties to commence repairing bridges on the line between them within 24 hours after notice has been served by three citizens or taxpayers of the state upon the member of the county board of each county in whose district part of the bridge is located. These statutory provisions seem to indicate quite clearly a legislative policy that the joint duty with respect to bridges on the dividing line between counties should be enforced by action against both counties. The wisdom and justice of such a policy is, of course, an argument in favor of its existence. While the act of 1889 (sections 114, 115, 116 and 117) seems to impose an absolute duty to repair immediately upon notice, any bridge on the line between adjoining counties, it must, I think, be subjected in construction to such limitations as will bring it into harmony with other provisions of the road law. If repairs are to be made under the act of 1889

without opportunity for competitive bidding, the legislature must have had in contemplation such repairs as might be rightfully so made under preexisting statutes. It could hardly have been the intention of the legislature to authorize a single commissioner to create an obligation that might, perhaps, amount to thousands of dollars against his county, or to require him to commence within 24 hours after notice a work of any considerable magnitude. This view is strengthened by section 85, ch. 78, Comp. St., which authorizes the county board, in cases of pressing necessity occasioned by extraordinary high water or other causes, to declare an emergency, and proceed at once to buy materials and hire labor for the repair of bridges. This latter statute was evidently intended to meet a condition not covered by the act of 1889, to create a power not previously existing. It authorizes, in cases of great necessity, as I understand it, the expenditure of large sums of money upon bridges, without advertisement or competitive bidding. The case of *Dutton v. State,* 42 Neb. 804, cited by counsel for relators, does in part support their claims, but it overlooks entirely the proposition established by later decisions that a bridge between counties is an indivisible unit within the meaning of the law relating to the cost of constructing and repairing such bridges. The author of the opinion does not seem to give much attention to the provisions of the statute bearing upon the point decided, and I cannot believe the conclusion reached is either just or in accord with the intention of the legislature."

The relators filed exceptions to the findings of the referee. The first exception relates to the sufficiency of the evidence to support the finding that it would cost about $5,000 to restore the bridge in question to its original condition. It is unnecessary to discuss the evidence upon this point, since there is no doubt under this evidence that the repairs necessary to put this bridge in its original condition, or even in a passable condition, would be much greater than the repairs contemplated by sections 114 and 115, ch. 78, Comp. St., referred to in the referee's

second conclusion of law. The other exceptions of the relators relate to the conclusions that the duty to repair the bridge is a joint duty imposed by statute upon both counties, and that this duty cannot be enforced by mandamus without giving the notice required by section 116 of said ch. 78.

We think that the reasons given by the referee are sufficient to justify these conclusions. It follows that the relators were not entitled to the relief demanded, and the writ is therefore denied.

WRIT DENIED.