STATE, EX REL. JAMES P. ELLIS ET AL., RELATORS, V.
LEONARD D. SWITZER ET AL., RESPONDENTS.

FILED MAY 10, 1907.   No. 14,944.

1. **Mandamus**: COUNTIES: BRIDGE REPAIRS: EVIDENCE: PRESUMPTIONS. Where a mandamus is sought to compel the commissioners of a county to repair a bridge, and it becomes necessary for the court to ascertain the amount in the treasury and available for such purpose, and it appears that the county has, without advertising for bids and letting contracts to the lowest bidder, incurred liabilities amounting to $4,000 for sundry repairs, the items of which are not disclosed by the evidence, the court will not assume, in the absence of evidence to that effect, that any one contract was for more than $100 and therefore in violation of section 83, ch. 78, Comp. St. 1903.

2. ———: BRIDGE REPAIRS: DISCRETION OF COUNTY COMMISSIONERS. In determining the character of repairs to be made to bridges, and what bridges shall be repaired, when there are not sufficient funds for all, the court will not control the discretion of county commissioners, unless there is a clear abuse of such discretion.

ORIGINAL application for a writ of mandamus to compel respondents, as county commissioners, to repair a bridge. *Writ denied and action dismissed.*

*G. W. Wertz,* for relators.

*C. A. Rawls, Byron Clark* and *E. R. Ringo, contra.*

CALKINS, C.

This was an original application by the relators, who are citizens and taxpayers of Cass county, for a mandamus to

compel the respondents, who are the county commissioners of Cass and Sarpy counties, to repair a bridge across the Platte river near Lousiville, in Cass county, where the Platte river forms the boundary between the two counties named.  An alternative writ was issued November 7, 1906, returnable January 7, 1907; and, the respondents having answered, the cause is now submitted upon the pleadings, an agreed statement of facts, and the depositions of the respondents, commissioners of Sarpy county.

The bridge in question consists of 132 spans of 22 feet each.  It was built in 1890, at a cost of $10,000, defrayed by bonds voted by Louisville precinct in Cass county; and has since been kept in repair, when in use, by the county of Cass, and citizens of Louisville precinct.  It was extensively repaired in 1900, and was partially destroyed in 1903, and again in March, 1905, at which time some 30 spans were carried away.  Since that time it has been out of use.  On August 15, 1905, the relators Richey and Panokin appeared before the commissioners of Cass county, and represented that the repairs of said bridge could be made for not to exceed $5,000; and said commissioners thereupon resolved that an emergency existed for the repair of said bridge, and invited the commissioners of Sarpy county to join them in the repair of the same, notifying them that if they failed to do so the county of Cass would proceed to make such repairs and collect from Sarpy county its just proportion of the cost thereof.  The commissioners of Sarpy county did not reply to this notice until June 18, 1906, at which time they refused to join in making such repairs.  At about this time the relators Richey and Panokin examined the plans and specifications for the repairs of said bridge, which they approved, and which were then adopted by the commissioners of Cass county, who immediately ordered the clerk to advertise for bids for the construction thereof.  In response to such advertisements three bids were received, and opened July 19, 1906, the lowest one aggregating $14,000. Thereupon the commissioners rejected all bids on the

ground that they did not feel justified in expending that amount of money at that time. On November 5, and after they had received notice that the alternative writ issued herein would be applied for, they adopted a resolution reciting that the resolution above referred to had been passed under the belief that there would be sufficient funds in the treasury of Cass county which might be lawfully used for that purpose; that since the passage of said resolution it had been ascertained that the cost of such repairs would far exceed the estimate made at the time of passing said resolution; that owing to rains and washouts throughout the county there were many bridges needing repairs, which were of greater public utility than the Louisville bridge; that after paying for bridges already contracted for and those needing repairs there would not be sufficient funds to repair the Louisville bridge; and resolving that the action theretofore taken be rescinded and annulled.

It appears from the stipulation of facts that on January 1, 1907, there was in the Cass county bridge fund from the taxes of 1905 the sum of $466. The total levy for 1906 was $18,245.16, of which $1,416.15 was railroad tax enjoined, leaving 85 per cent. of the remainder, or the sum of $14,304.86. But it is agreed that there were orders out for the construction of bridges amounting to the sum of $4,000; and if we deduct the latter sum it leaves for the construction and repair of bridges until the next levy shall become available only the sum of $10,304.86, which added to the $466 on hand, makes a total of $10,770.86. In Sarpy county the total uncollected levy for the bridge fund for 1906 on January 7 was $10,072.06; but, after deducting 15 per cent. and the amount of railroad tax enjoined, there remains but $6,836.63, to which must be added the amount of cash on hand at that date, $1,187.30, making a total of $8,023.93. Against this there were claims allowed $1,056.42, registered warrants $1,975.19, and taxes paid under protest $334.64, or a total of $3,366.-25, which, deducted from the sum otherwise available,

leaves a balance of $4,657.68. On October 11, 1906, the commissioners had advertised for bids for a steel bridge, and let the contract therefor November 17 at the price of $2,500, and if we deduct this latter sum it leaves but $2,157.68 available.

It is stipulated that Charles A. Richey, a financially responsible citizen of Cass county, states under oath that he is ready to enter into a contract, with sufficient bonds to repair the bridge according to the original plans for $7,600; but that "in the judgment of the respondents" the bridge as originally constructed is not a practical bridge, and that it would be a waste of public money to reconstruct it according to the original plans; that it should be made stronger in several respects, and as good as required by the plans and specifications under which the bids of July 19, 1906, were made at a necessary cost of $14,000. It is further stipulated that there are nearly 1,600 bridges in Cass county, more than 700 of which are 16 feet or more in length; that there never had been less than 40 bridges in need of repair and reconstruction each and every year, and that in years of heavy rainfall this number is greatly increased; that the county has never had sufficient funds to do all the work necessary in repairing and rebuilding bridges in any one year; that at the date of the hearing there were, in the "judgment" and according to the "conclusions" of the commissioners of Cass county, 8 bridges in need of immediate repair, which would cost $7,300, all of which bridges were of greater utility and accommodated more travel than the Louisville bridge, and should, in the opinion of the commissioners, be repaired in preference thereto.

The evidence of the commissioners of Sarpy county shows that there are other bridges in said county needing repairs, but it is so indefinite as to the extent and costs of such repairs that it is of little value.

1. The agreed statement of facts gives the state of the bridge funds in the respective counties in October and

9

November, 1906, but is lacking in the amount of liabilities incurred at those dates, and we have taken their status at the date of the return of the writ. There does not seem to have been any unusual expenditure made or incurred between the application and the return of the writ, unless it be the contract for the steel bridge by Sarpy county. We do not think the issuance of an alternative writ should prevent the ordinary and usual transaction of the business of the county board; and it appears that only $838.55 was contracted by Cass county between the date of the notice of the application for the writ and the date of the return, which cannot materially affect their ability to comply with any judgment we might make.

It is contended by the relator that the liabilities incurred by the county of Cass, amounting to the sum of $4,000, which the respondents seek to deduct from the amount otherwise available, was incurred in violation of section 83, ch. 78, Comp. St. 1905, and should not be considered. This statute provides for the letting to the lowest bidder of all contracts in excess of $100, but the stipulation fails to disclose the amount of any of the items making up the sum of $4,000, and we cannot presume that any one of them was in excess of $100. Even if this were not so, it was held in *Cass County v. Sarpy County,* 66 Neb. 476, that one who furnishes labor and materials for the creation of a public work in good faith, but in the absence of a contract such as is required by the statute, is entitled to recover their reasonable value, and we cannot disregard this liability in estimating the funds available in the bridge fund of Cass county.

2. The duty of Cass and Sarpy counties to maintain this bridge is enjoined by sections 87, 88, 89 and 90, ch. 78, Comp. St. 1905, and has been judicially determined in the cases which have been before this court. In *Dutton v. State,* 42 Neb. 804, it was held that the bridge is the property of the public and a part of the public highways of the state, and that it is the duty of the commissioners of Cass county to keep the south half thereof in repair. In

*State v. Commissioners,* 58 Neb. 244, this court affirmed a judgment of the district court for Cass county denying a mandamus to compel the commissioners of Cass county to repair the north half thereof. In *Cass County v. Sarpy County,* 63 Neb. 813, and 66 Neb. 473, 476, the liability of Sarpy county to Cass county for repairs was determined; while in *Iske v. State,* 72 Neb. 78, it was held that mandamus would lie to compel Sarpy county, when notified so to do by Cass county, to either join in a contract to make repairs, or to unequivocally refuse so to do. From these cases, and the sections of the statute above referred to, it seems there is no doubt that it is the duty of the respondents .to keep this bridge in repair, if they have funds at their disposal reasonably available for that purpose. The duty to repair involves the duty to determine and specify the character of the repairs within the limits of their reasonable discretion. It is a general principle that the building of bridges, or the making of local improvements, is a discretionary power entrusted to public and municipal corporations, and, when the proper authorities have in good faith decided, mandamus will not issue to compel them to a different course. Dillon, Municipal Corporations (4th ed.), sec. 836. Such was the rule adopted in *State v. Kearney County,* 12 Neb. 6, and it was there applied in a case where the commissioners had not sufficient funds to make all the repairs demanded. Such, it seems to us, must be the rule.

The county board is forbidden by statutory provisions highly penal from incurring liabilities beyond its legal levy and lawful appropriation, and it must often happen that that body is forced to choose between objects of expenditure both of which are necessary. When they build or repair a bridge, the commissioners must necessarily decide upon the material to be used and the character and design of the structure. If from their experience they are convinced that the original design of a structure is faulty, and that it would be a waste of public money to reconstruct it according to the original plan, it is their duty to

make such changes as in their best judgment are necessary under all the circumstances. In this case it appears that the commissioners of Cass county had on hand on January 7, 1907, between $10,000 and $11,000 in the bridge fund, to be used in making such repairs as were then necessary, and as would likely develop in the six months to elapse before the next levy should become available. The commissioners, being residents of Cass county, would have a personal knowledge of local conditions, the character and amount of travel upon the different highways, and the relative importance of the different bridges. Having in charge nearly 1,600 bridges, they should acquire by experience the capacity to judge of the merits of different plans and methods. With these opportunities, they have decided: First, that it would be a waste of public money to rebuild this bridge according to the original plan, and that the least price for which it can be properly constructed is $14,000; second, that there are 8 other bridges in need of immediate repair, which will cost $7,300; and, third, that the bridges last above mentioned are of greater utility to the taxpayers of the county of Cass than the bridge in question, and that the travel over them is greater than over the Louisville bridge.

The form of the stipulation of facts precludes the relators from asserting that these were not the honest conclusions of the commissioners. Paragraph 14 of the statement stipulates that in the judgment of the respondents the bridge as heretofore constructed was not a practical bridge, while paragraph 25 of the statement stipulates that paragraph 8 of the answer states the judgment and conclusions of the commissioners, and paragraph 8 of the answer covers the second and third conclusions above stated. The word "judgment" is here used as synonymous with "opinion" and "belief." When the stipulation agrees that it is their opinion, it necessarily follows that it must be their real opinion, and therefore their honest conviction. But there is nothing in the record to impeach the soundness of their conclusions. There is no evidence

offered from which we would be justified in arriving at a different conclusion. If it is our duty to determine whether the bridge should be repaired according to the original plans or according to the specifications approved by the commissioners of Cass county for that purpose, we are without any data upon which to base our decision. If it is our duty to decide whether the other bridges are in need of immediate repair, there is nothing before us to enable us to form a correct opinion. Or, again, if it is our duty to decide whether the 8 bridges are of greater utility than the Louisville bridge, the facts are not before us.

The decision of the county commissioners of Cass county above referred to being made within the limits of their discretion, and not impeached for bad faith nor any error shown therein, it follows that they would not have enough money left, after repairing the 8 bridges, to repair one-half of the Louisville bridge according to the plans adopted by them and approved by the relator Richey at the time, and scarcely enough to repair one-half of the same according to the original plan and as proposed by Mr. Richey. For us to say that the commissioners must repair the bridge according to the latter plan would be for us to decide if such a course was a wise expenditure of the public funds, or whether ordinary prudence and economy demanded that the work be done according to the plans adopted by the commissioners. This we do not conceive it our duty to do; and, if it were, we are without any evidence upon which to determine the question.

So far as Sarpy county is concerned, its commissioners have shown a determination to avoid, if possible, any expenditure upon this bridge. They evidently have not the funds available to pay one-half of $14,000 for the repair of the bridge; and whether they have sufficient to pay one-half of $7,600 depends upon whether the liabilities for the steel bridge advertised for October 11 and contracted for November 17, 1907, should be deducted. In view of the conclusion at which we have arrived concerning the decis-

ion of the commissioners of Cass county, it is unnecessary for us to pass upon this question.

It follows that the peremptory writ must be denied.

By the Court: For the foregoing reasons, the writ is denied and the case dismissed.

WRIT DENIED.