STATE, EX REL. ARCHIE MCMILLIN, APPELLEE, V. BOYD COUNTY ET AL., APPELLANTS.

FILED APRIL 30, 1936. No. 29659.

*W. L. Brennan,* for appellants.

*A. B. Wallace, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and FITZGERALD, District Judge.

FITZGERALD, District Judge.

This action arose in Boyd county, Nebraska, on a petition in the name of the state of Nebraska, on the relation of Archie McMillin, who will be referred to as plaintiff in this opinion. It is conceded by all the parties that plaintiff is a pauper within the meaning of our statutes, and he prayed for a peremptory writ of mandamus against the respondents, the county of Boyd and the county board of supervisors of said county, who will be hereinafter referred to as defendants. The trial judge found in favor of the plaintiff and decreed that a peremptory writ of mandamus issue against said respondents, commanding the defendants, the board of supervisors of the poor, to aid, support and grant relief to plaintiff as a pauper.

Plaintiff is 35 years of age, and a cripple, and while he is apparently crippled only in his power of locomotion, it does not appear that he has any capacity for earning his livelihood. His condition has existed since he was seven or eight years old. He has apparently had a country school education, and attended school some in Anoka, in Boyd county, Nebraska. The record does not disclose his place of birth, but at the age of three or four years he was a resident of Boyd county, either on a farm a short distance from Anoka, or in Anoka.

It is difficult to ascertain from the record any definite dates, but plaintiff lived with his father and mother in Boyd county, where the mother died, until plaintiff reached the age of at least 25 years. Some time thereafter plaintiff and his father moved to a tract of land in Cherry county, near the South Dakota border, the greater part of the tract of land being in South Dakota, but the home being in Cherry county, Nebraska. Plaintiff states that they remained there about seven or eight years, when the father sold out his personal effects, and he and plaintiff returned to Boyd county in November, 1933, where the father made arrangements to rent a building and conduct some sort of a store in Anoka, Boyd county, Nebraska. They moved some of their belongings into the store building, and put up their bed, but a storm arose and blew the front end out of the building, after which plaintiff and his father went to Norfolk, in Madison county, Nebraska, where a brother of plaintiff was living.

Plaintiff states that the stay in Norfolk was only a visit, but on the last day of December, 1933, plaintiff's father died in Norfolk, Madison county, Nebraska, and his estate was probated in that county. Plaintiff received from his father's estate something over $100, and he remained in Norfolk until about the 10th of October, 1934, when he returned to Anoka, Boyd county, Nebraska. About that time he sold a Ford automobile for $135, receiving $40 in cash and a note for the balance. He turned over to Mabel Keeler the $40 in cash and the note for the balance, and he boarded

and roomed with her and her family up to shortly before bringing this action.

It appears from the record that Mabel Keeler and her family were on relief during part, if not all, of this time, but it does not appear that plaintiff knew that fact. Some time in February, and again in March, it appears that plaintiff made application for relief, which was denied, although those in charge of the federal relief appear to have had in contemplation increasing the relief to Mabel Keeler because of her having the plaintiff as a charge, but it does not appear that her allowance was increased, nor does it appear that there was anything but the relation of debtor and creditor existing between the plaintiff and Mabel Keeler.

It appears that while plaintiff stayed in Norfolk he paid some of the money received from his father's estate toward his board with his brother John, but that such payment was small, and the defense has shown that his brother John was also on relief in Norfolk. There is another brother, but his financial condition is little better than that of John. There is a grandmother living in Boyd county, but her financial condition is about the same.

After plaintiff had made application for relief, which was denied him, he was finally told that they would have to "fight it out," and plaintiff appears to have seen an attorney, and he appears to have had some money to pay part of the expenses of starting this action. A few days prior to April 18, 1935, the situation became acute, and, on or about April 18, plaintiff was put in jail and remained there four or five days, after which the petition in this action was filed.

The record does not disclose that plaintiff received any public or private charity within six months after October 10, 1934, when he testified he returned to Boyd county. The record discloses that he asked for aid, but received none, and the learned trial judge who heard all of the witnesses and observed their demeanor could very well find from the testimony in the trial that plaintiff had spent six months in Boyd county before becoming a pauper and a

charge upon either public or private charity, and we find that his ruling that plaintiff was entitled to a peremptory writ of mandamus is amply supported by the evidence, and should be and is

AFFIRMED.

CARTER, J., concurs in the result.