STATE OF NEBRASKA EX REL. ELIZABETH STRANGE ET AL., RELATORS, v. SCHOOL DISTRICT OF NEBRASKA CITY, OTOE COUNTY, NEBRASKA, ET AL., RESPONDENTS.

33 N. W. 2d 358

Filed July 20, 1948.   No. 32455.

*John L. Mattox,* for relators.

*Moran & James,* for respondents.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

In this action relators sought a writ of mandamus requiring the respondents to conduct the first, second, third, and fourth grades, with adequate teachers, in the Kearney school in the respondent district during the school years 1947-1948, and thereafter, and that they be enjoined from closing or discontinuing any of said grades in said school, and for equitable relief. An alternative writ was issued and served. On motion of respondents the alternative writ was recalled. An alias alternative writ was issued. Respondents answered. On issues made, trial was had resulting in a denial of a writ and the dismissal of relators' petition. Relators appeal. We affirm the judgment of the trial court.

The litigation arises out of the following factual situation. Nebraska City is a municipal corporation with approximately seven thousand population. The respondent school district comprises the city and some continguous rural area. It is a body corporate with a board of education of nine members. It operates schools in eight different school buildings, of which one is the Kearney school.

Prior to the school year 1946-1947, school for grades one to four was conducted in the Kearney building with two teachers for the four grades. The enrollment for the year 1945-1946 was 34 pupils in the four grades. At

the beginning of the school year 1946-1947, the enroll-
ment dropped to 27, with one teacher. In October 1946,
parents of the children in the school requested that an
additional teacher be provided at the Kearney school.
A meeting of representatives of parents and the school
board followed, resulting in a decision of the board to
transfer the third and fourth grade pupils to an adjoin-
ing school. This was based on the financial necessities
of the respondent school district. The parents did not
protest the decision. The Kearney school was operated
for the first and second grades during the balance of the
school year.

On March 24, 1947, the board adopted a resolution
closing the Kearney school. On May 5, 1947, there was
presented to the board a petition of 235 residents and
taxpayers of the district served by the Kearney school
protesting the proposed discontinuance and requesting
that the school be kept open and that grades one, two,
three, and four be taught therein. The board did not
grant the request.

Subsequent to the resolution to close the school, legis-
lative authority to increase the levy was had, which it
was anticipated would increase the available funds of
the respondent for the support of the schools. On June
23, 1947, the board adopted a motion to continue the
Kearney school for the year 1947-1948. From the evi-
dence it appears that the board contemplated continuing
instruction in grades one and two at the Kearney school,
and that the third and fourth grade pupils would attend
a school approximately half a mile distant from the
Kearney school. Pupils in the Kearney school area, so
transferred, are required, by the convenient route, to
go to the adjoining school along a heavily traveled inter-
state highway, intersected by a main-line railroad, and
to pass a business section where there are stores and a
beer tavern. The evidence is that there is considerable
train movement on the railroad tracks during the day,
and congestion of traffic at the stores and beer tavern,

both in the street and on the sidewalk. These hazards would not be met if the children attended school at the Kearney school.

Relators brought this action in May 1947, in which they alleged the above situation generally.

The petition is based upon two theories of a right to the writ. They alleged that there are more than five children between the ages of seven and 16 years who will attend school during the term, and that the proposed plan to close the school is without the approval of the superintendent of schools of Otoe County, or of the Superintendent of Public Instruction of the state. They also alleged that the proposed plan is an abuse of the discretion vested in the board in the management of the affairs of the school district.

The respondent board answered that its action was originally taken as an economy measure, and its determinations were administrative matters within the sound discretion of the board.

As above stated, the trial court sustained respondents' motion to recall the first alternative writ. This was based on the proposition that the verification to the petition was sworn to before relators' attorney. The trial court ordered the re-verification of the original petition, and that was done before the clerk of the court. It resulted in the issuance of the alias writ and a few days' delay in the proceedings. Relators assign the sustaining of the motion as error.

Section 25-829, R. S. 1943, provides: "The affidavit verifying pleadings may be made before any notary public or other officer authorized to administer oaths, and must be signed by the party making the same; and the officer before whom the same was taken shall certify that it was sworn to or affirmed before him and signed in his presence. The certificate of such officer, signed officially by him, shall be evidence that the affidavit was duly made, that the name of the officer was written by himself, and that he was such officer, and nothing

herein shall be construed to prohibit an attorney at law, who is a notary public, from swearing a client to any pleading or other paper or affidavit in any proceeding of the courts of this state."

This act was construed in Horkey v. Kendall, 53 Neb. 522, 73 N. W. 953, 68 Am. S. R. 623. It was there held that this act authorized the verification of pleadings before the attorney of record. Clearly the verification here is within the scope of that holding, and it was error to sustain the motion. However, it was error without prejudice.

Prior to trial, the relators demanded a jury trial. They so moved at the beginning of the trial. The demand was overruled. Relators assign this as error. As heretofore pointed out, the relators, in addition to praying for a writ of mandamus, sought also an injunction and equitable relief.

As to mandamus, the rule is: "The trial of issues of fact on an application for a mandamus is not one in which a jury may be demanded as a matter of right." Mayer v. State, 52 Neb. 764, 73 N. W. 214.

Clearly the relators had no right to a jury trial and the court did not err in denying it.

Relators next assign as error the admission in evidence of certain exhibits. Two only are questioned directly. As to exhibit 8, a budget of the respondent district for 1947-1948, the record shows that, while it was identified as respondents' exhibit, relators offered it in evidence. Certainly relators cannot predicate error as to that. Exhibit 14, about which complaint is made, is in part an exact copy of exhibit 8 and the remainder is a statement of the various funds showing items of expenditure which are shown only by totals in exhibit 8. A large part of the items in this exhibit had been read into the record, without objection, prior to the offering and admission of the exhibit. We see no error in the admission of exhibit 14.

Relators next contend that the judgment is contrary

to law and rely on sections 79-221 and 79-223, R. S. 1943. Under certain conditions including the permission of the parent and the approval of the county superintendent, these sections provide for the closing of schools and the transfer of pupils, where there are less than five children who are seven years of age and less than 16 years of age, who will attend school during the term and who reside in the district. The evidence establishes that there are more than the recited number of pupils in the district and that such permission and approval were not had.

An examination of the statutes and their history shows that there is no merit in this contention. In the revision of 1943, the Statute Commission divided section 79-218, C. S. Supp., 1941, into six separate sections which appear as sections 79-220 to 79-225, R. S. 1943. Section 79-218, C. S. Supp., 1941, was originally enacted as section 14, subdivision II, Laws 1881, page 341.' What now appears as sections 79-221 and 79-223, R. S. 1943, was added thereto in the years 1921 and 1939, respectively, by amendment. In Gaddis v. School District, 92 Neb. 701, 139 N. W. 280, we reviewed the history of school legislation in this state. We there pointed out that the first five subdivisions of the 1881 act apply to school districts organized on the town meeting plan, or as we there said, to "country districts." We also pointed out that a separate provision of that act, subdivision XIV, page 376, applied to school districts in cities and villages, subject to population limitations. In turn, subdivision XIV is obviously the foundation of chapter 79, article 25, R. S. 1943. As we said in the Gaddis case, these provisions create two systems, one vesting the control of the corporation in the electors at the school meeting where the "government and control is almost a pure democracy," and the other making the board of education the governing body where the plan of government is representative in form. Both by pleading and proof relators' demonstrate that the respondent district is without the

provisions of sections 79-221 and 79-223, R. S. 1943. Those sections have no application to the respondent district.

Relators' next contention is that the judgment is contrary to and not supported by the evidence.

The school is under the direction and control of the board of education. Richardson v. Braham, 125 Neb. 142, 249 N. W. 557. The court has no power by mandamus to control the decision of those matters which are left by statute to the discretion of the governing body of a governmental agency. State ex rel. Nebraska B. & I. Co. v. Board of Commissioners, 105 Neb. 570, 181 N. W. 530. A peremptory writ of mandamus should be issued only where the legal right to it is clearly shown. Hess v. Taylor, 142 Neb. 184, 5 N. W. 2d 346.

Relators have shown that to transfer pupils from the Kearney school to the adjoining school results in inconvenience and hazards of travel to those involved. These inconveniences and hazards are common in a greater or lesser degree to all school children in urban and, in many instances, rural areas. It may well be that the respondent board could have budgeted funds so as to have maintained four grades with two teachers at the Kearney school. It appears from the evidence, however, that economical administration of the affairs of the school was the course followed. It also appears that better facilities and instructional staff and equipment are had for pupils at the alternate school than at the Kearney school. All of these matters are for the consideration of the board. The action to be taken was for the board to determine, and not for the relators, the 235 petitioners, or for the court. The evidence does not show that the relators have a right to the writ.

The judgment of the trial court is affirmed.

AFFIRMED.

CARTER, J., participating on briefs.