State of Nebraska ex rel. Lee Heil, appellant, v.
Richard Jakubowski et al., Supervisors of
Sherman County, Nebraska, appellees.

38 N. W. 2d 26

Filed June 10, 1949.   No. 32616.

*H. G. Wellensiek* and *Donald H. Weaver*, for appellant.

*W. H. Line*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is a mandamus action in which the county supervisors of Sherman County are respondents. Relator sought a writ to compel respondents to repair a bridge across the Middle Loup River about midway between Loup City and Rockville in Sherman County. An alternative writ was issued. Answer was made and trial had. The trial court found generally for respondents and denied the writ. Relator appeals. We affirm the judgment of the trial court.

On March 12, 1948, the relator filed in the district court for Sherman County his application for an alternative writ of mandamus. In it he alleged that he was a resident, taxpayer, and elector of Sherman County; that the respondents were the supervisors of said county and had general supervision, charge, and control of the highways and bridges of the county and were required by law to keep and maintain the highways and bridges open and in proper repair for use and travel by the public; that the "Austin Bridge," describing its location, was a part of a public road in the county; that during the summer of 1947, it was wrecked by high waters and made impassable for travel; that respondents closed said road to the public; that on February 6, 1948, the relator and others served written notice on the respondents McFadden and Ogle, the two supervisors in whose district the bridge was located, to repair the bridge and put the same in safe condition for travel; that the respondents failed, neglected, and refused to repair the bridge and highway and restore the same to a safe condition for travel; that the bridge and road had been for 25 years on the star route of the United States mails, out of Rockville, and as a result of the bridge being impassable the patrons now receive triweekly instead of daily mail service; and that relator and the public are denied the use

of the road and put to great inconvenience. The notice pleaded is attached to the application and service is recited as having been made on February 6, 1948. It is directed to the two-named supervisors, gives notice that the bridge is out of repair and unsafe for travel, and demands that the board of supervisors "* * * proceed to repair said bridge and put the same in a safe condition for travel, as provided by Section 39-831, Revised Statutes of Nebraska, 1943."

The alternative writ was issued on March 20, 1948.

The respondents answered, admitting the allegations as to the relator's qualifications, the legal existence of Sherman County, respondents' position as supervisors, the wrecking of the bridge by high waters which made it impassable for travel, and the service of the notice of February 6, 1948, and denied other allegations. Answering further, the respondents alleged affirmatively facts which they contended justified their action and a denial of the writ. The facts as alleged will be covered in the recital of the evidence.

The trial court found generally for the respondents and against the relator and "from the evidence and pleadings" denied the writ.

The relator's case-in-chief was stipulated. The stipulation set forth facts admitted by the answer that during the summer of 1947 the bridge "was wrecked by high water and made impassable for travel"; that the road is on the star route rural free delivery from Rockville; that the road is impassable; that the bridge has not been repaired; and that respondents have taken no action to repair it. The service of the written notice of February 6, 1948, on the two supervisors was admitted, and a copy of the notice was offered and received in evidence.

The evidence as to the bridge is that in the year 1906 it was built of lumber on wooden piling driven into the sand from 15 to 20 feet and that there is no hardpan or rock foundation upon which piling can be made to rest. The bridge was 480 feet long. The piling in it was ex-

tensively replaced in 1916. Thereafter it was damaged by floods and ice and repaired from time to time. Several years before 1947 it was in a bad state of disrepair due to damage and deterioration, and traffic on it was limited to light loads. It was last extensively repaired by a "half sole" operation in 1945. On June 20, 1947, as a result of extreme high water 120 feet of the bridge were washed out and carried over 2 miles downstream. At the same time about 20 feet of the approach at the east end were washed away.

Some 200 yards to the west of this long bridge was a smaller 32-foot-long bridge over a channel of the river. This bridge was also washed away, together with its approaches. Apparently at the same time many other roads and bridges in the county were substantially damaged or destroyed.

Respondents' evidence is to the effect that the old bridge cannot be repaired; that there is no salvage of materials in it, save some of the piling and "half soling" lumber; and that to meet the carrying capacity required by section 39-803, R. S. 1943, it would require the building of two new bridges and approaches, and grading between the bridges at an estimated cost of $26,350, and to insure permanency ice breakers should be installed at an estimated added expense of $500 or $600.

Relator's evidence is that the bridge can be put back in the condition, as to carrying capacity, in which it had been before the June 1947 flood for $4,000. The evidence as to foundation for this estimate is not assuring as to accuracy. This estimate included use of salvage materials, and expenses on approaches, but did not include the cost of filling in the smaller channel which the witness proposed should be done. Relator offered an estimate of about $11,000 as the cost of a new bridge of reduced length at a new location on the section line north of the present location.

The evidence of the respondents is that there is little, if any, need for a bridge at the location involved, save

for the mail route and neighborhood use. The evidence of the relator is that the bridge was used somewhat more than respondents contend, and that if a 10-ton capacity bridge were built, it would be extensively used.

The evidence also is that before the bridge went out the star route proceeded daily from Rockville up one side of the river, across the bridge and returned on the other side. It now goes up and back one day on either side so that triweekly and not daily mail service is had. The patrons have made no effort to secure other or a rearranged service.

It further appears from the respondents' evidence that there are several bridges along well-used roads in the county that have not yet been repaired or replaced, and that a number of those are on mail routes.

The conflicts in the evidence must be here considered as having been established in respondents' favor in the light of the court's finding and the rule that "Finding of fact in a mandamus proceeding, based on conflicting evidence, will not be disturbed on appeal unless it is clearly wrong." State ex rel. Lackey v. Gering & Ft. Laramie Irrigation District, 129 Neb. 48, 260 N. W. 568. See State ex rel. McMillin v. Boyd County, 130 Neb. 898, 266 N. W. 764.

It was stipulated that for the fiscal year beginning July 1947, the legal limit was levied in the bridge and emergency bridge fund in the sum of $21,896.23; that there was a balance of $9,868.47 on June 30, 1947; and that the estimated receipts from the state from the gasoline tax, etc., were $5,505.30, or a total of $37,270 for the fiscal year if all levies were collected in full. It further was stipulated that on February 6, 1948, there had been spent from said bridge funds the sum of $19,714.19; that there were outstanding bills of $4,360.44 and bids of $3,088.87 allowed for lumber, or a total of $27,163.50, leaving a balance of $10,106.50 with which to construct and repair all bridges in the county during the remainder of the fiscal year. It later was stipulated that the amount

actually received during the fiscal year from the gasoline tax and other funds was $6,992.39 as against the estimated receipts of $5,505.30. It also was stipulated that on February 6, 1948, there was a balance in the road fund of $16,546.95 against which there was an outstanding contract for road machinery estimated to cost between $11,000 and $12,000, and that the average monthly amount expended from said fund for maintenance of equipment, labor, oil, gas, etc., on the public roads was $3,246.

The applicable rules are the following:

"A peremptory writ of mandamus should be issued only where the legal right to it is clearly shown." State ex rel. Strange v. School District, 150 Neb. 109, 33 N. W. 2d 358.

"Mandamus, while classed as a law action, is an extraordinary remedy, which is not awarded as a matter of right, but rests in the sound discretion of the court governed by equitable principles, and will not issue when to do so would compel the doing of a substantial wrong." State ex rel. Read v. Farmers Irrigation District, 116 Neb. 373, 217 N. W. 607.

"While the writ of mandamus may be issued to require an inferior tribunal or board to exercise its judgment, or proceed to the discharge of any of its functions, it cannot control its judicial discretion." State ex rel. Davis v. Hoctor, 98 Neb. 15, 151 N. W. 923. See State ex rel. Garton v. Fulton, 118 Neb. 400, 225 N. W. 28.

"Mandamus may issue against a public officer to compel him to act, when (1) the duty is imposed on him by law, (2) the duty still exists at the time the writ is applied for, and (3) the duty to act is clear." State ex rel. Herbert v. Anderson, 122 Neb. 738, 241 N. W. 545. See, also, State ex rel. Johnson v. Goble, 136 Neb. 242, 285 N. W. 569; State ex rel. Cashman v. Carmean, 138 Neb. 819, 295 N. W. 801.

Repairs of county bridges contemplated by sections 39-831 and 39-832, R. S. 1943, are such as may be made

at once and without considerable cost.  State ex rel. Sumption v. Smith, 77 Neb. 1, 108 N. W. 173.

"In determining the character of repairs to be made to bridges, and what bridges shall be repaired, when there are not sufficient funds for all, the court will not control the discretion of county commissioners, unless there is a clear abuse of such discretion."  State v. Switzer, 79 Neb. 78, 112 N. W. 297.  See, also, State v. Kearney County, 12 Neb. 6, 10 N. W. 413; Brown v. Merrick County, 18 Neb. 355, 25 N. W. 356.

It is patent that relator rested his application for a writ upon sections 39-831 and 39-832, R. S. 1943.  The notice pleaded and proved was served as provided in section 39-831, R. S. 1943, upon only two members of the board of the district within which the bridge is situated, and the notice specifically demanded that the board repair the bridge as provided in that section.  The application for the writ rests upon that notice.  Considering the total funds that the county had available for bridge work and the relator's evidence that the cost of repairs would be at least $4,000, it is obvious that the cost would be considerable and that the trial court properly denied the writ under the authority of State ex rel. Sumption v. Smith, *supra.*

It further appears that at the time the demand was made the county board had the duty of determining which of the many damaged and destroyed bridges should be repaired by the use of the limited available funds, and that that discretion was one within the determination of the board and under the authorities above cited was not for the court to exercise by a writ of mandamus.

As we said in State v. Switzer, *supra:* "The duty to repair involves the duty to determine and specify the character of the repairs within the limits of their reasonable discretion.  It is a general principle that the building of bridges, or the making of local improvements, is a discretionary power entrusted to public and municipal corporations, and, when the proper authorities have in

good faith decided, mandamus will not issue to compel them to a different course." The findings of the trial court, sustained by the evidence, determine that the respondents acted in good faith and did not abuse the discretion reposed in them.

Relator relies in part upon the following provision, which is a part of section 39-222, R. S. Supp., 1947: "It shall be the duty of every such county highway official in charge of road work to give the preference to rural mail route and star mail route roads in keeping the same in repair."

The evidence discloses that many bridges had been repaired and rebuilt on roads used as mail routes and that other bridges on such routes remained to be repaired and rebuilt from the available funds. The same section provides that consideration shall be given to "the importance of the highway to the traveling public." We need not now undertake to determine the exact limitations of the two provisions. They obviously place a discretion in the county officials. There is no showing here of an abuse of that discretion.

Relator relies here upon our decisions in McNair v. State, 26 Neb. 257, 41 N. W. 1099; State ex rel. Enerson v. County Commissioners, 102 Neb. 199, 166 N. W. 554; and State ex rel. Draper v. Freese, 147 Neb. 147, 22 N. W. 2d 556. The issues determined in those cases are not the issues presented here. We are not here concerned with whether mandamus is a proper remedy but whether a mandatory writ may be had under the issues, facts, and circumstances disclosed by this record.

Finally relator submits that if it be found that the respondents did not have sufficient funds to repair the bridge or build a new one on the section line, they should be here directed and ordered to levy sufficient funds to pay for the same, and requests a reversal with directions to issue an alternative writ. It is clear here that the respondents did not have available funds to rebuild this bridge even without giving any regard to their duty

to select and to repair and rebuild other bridges in the county. It also is clear that the duty to build a bridge on a new location was not an issue in the case. To sustain this last contention, relator at the bar here refers to section 39-847, R. S. 1943, and requests the alternative writ based on the provisions of that section.

The parties stipulated that Sherman County had levied the "legal limit" for the bridge and emergency bridge fund for the fiscal year beginning in July 1947. Whether or not that stipulation is inclusive or exclusive of the levy authorized in section 39-847, R. S. 1943, cannot be determined from this record and need not be. This record discloses no demand upon the respondents that they proceed under the provisions of section 39-847, R. S. 1943; no such demand was pleaded; no issues were made with reference to the duty of the respondents under that section; no evidence was introduced thereon; and the trial court made no determination of that question. Obviously the matter is not here for consideration.

The judgment of the trial court is affirmed.

AFFIRMED.