LOUISA KUNZ, APPELLANT, IMPLEADED WITH GOLDA HAITH ET AL., APPELLEES, v. H. L. BORNEMEIER ET AL., APPELLEES.

102 N. W. 2d 842

Filed May 13, 1960. No. 34733.

*Johnston & Grossman* and *Norman F. Langemach,* for appellant.

*James F. Begley,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action wherein Louisa Kunz, Golda Haith, and Kenneth Haith, plaintiffs, instituted an action in the district court for Cass County, Nebraska, against H. L. Bornemeier, W. F. Nolte, and Melvin R. Todd, county commissioners of Cass County, Nebraska, defendants, the purpose of which was to obtain a writ of mandamus requiring the defendants to rebuild, restore, or replace a bridge and maintain a section-line public highway on the line between Section 4, Township 10 North, Range 10 East, and Section 9, Township 10 North, Range 10 East, in Cass County, Nebraska, which line was alleged to be 1 mile of a road designated as No. 169. Highway No. 169 is a road 8 miles in length.

A trial was had to the court and the writ of mandamus was denied. A motion for new trial was filed and in due course overruled. From the judgment denying the writ and the order overruling the motion for new trial, the plaintiff Louisa Kunz has appealed.

By the petition the plaintiffs substantially alleged that the area involved was and still is a public highway which has never been vacated, and that it was at one time used as a United States mail route; that they are the owners of 80 acres of land which is of the value of

$20,000 in Section 4 which abuts, adjoins, and is contiguous to this line; that there is no other adequate and proper means of ingress or egress to this land; and that the plaintiffs, the traveling public, and the taxpayers of Cass County are entitled by law to have the highway and a bridge across it maintained in a reasonable and passable condition.

It is further alleged, again substantially, that although it was the duty of the defendants to rebuild, restore, or replace the bridge and maintain the highway they have failed so to do.

The defendants Bornemeier and Todd filed separate answers which in all material respects are the same. They admitted that the land in question was owned by the plaintiffs Louisa Kunz and Golda Haith. There was a general denial of the other allegations of the petition. This was followed by affirmative allegations, in substance, that another public highway had been established which gives adequate ingress and egress to the land directly involved; and that the cost and expense of constructing and maintaining the bridge and road would entail an unwarranted expense of public funds and a breach of the discretion with which they are clothed as county commissioners.

The defendant Nolte filed a separate answer concerning which it is necessary to state here only that by it he declared that the road and bridge in question were not passable and usable; and that he at no time voted to deny the relief prayed by plaintiffs in this action. The answer concluded with a prayer for instruction by the court as to his duty.

The judgment was based on a finding that the defendants Todd and Bornemeier exercised their best judgment and discretion in the performance of their official duties in denying the request of plaintiffs to open the section-line road and restore the bridge involved in this dispute, and that they did not act arbitrarily, capriciously, or unreasonably.

The appellant has set forth in her brief five assignments of error. There are however but two questions presented for consideration. The first is that of whether or not the judgment is contrary to the evidence and the other is that of whether or not it is contrary to law.

Before entering upon a consideration of the assignments of error it appears necessary to consider the theory on which the case was presented by the petition and a defense thereto which is presented by the answers of the defendants Bornemeier and Todd, but not re- sponded to by the judgment.

The theory is, as has been pointed out, that the appellant is entitled to have this mile maintained and the bridge kept in repair for the reason that this is an established public highway. The position of the defendants Bornemeier and Todd is that this was never established as a public highway.

It is true that if this has never been established as a public highway no right on the record made in this case flows in favor of the appellant to have it opened and maintained. Highways may be established in two ways. One is by dedication and the other is by prescription.

"A public highway by prescription may be established by continuous adverse use thereof by the public for a period of ten years." Lancaster County ex rel. Rosewell v. Graham, 120 Neb. 785, 235 N. W. 338.

The question of whether or not this was established as a highway by prescription must be decided adversely to the appellant. There is no evidence to support a finding that the mile was ever, over any continuous period of 10 years, used by the public as a highway.

In determining the question of whether or not a highway has been established by dedication the court is required to examine the proceedings had to ascertain if the jurisdictional requirements necessary for that purpose have been met. If they have not been met the right does not exist and lapse of time will not

supply the defect. See, Peterson v. Fisher, 71 Neb. 238, 98 N. W. 660; Rosenbery v. Tibke, 88 Neb. 51, 128 N. W. 647; State ex rel. Draper v. Freese, 147 Neb. 147, 22 N. W. 2d 556.

There was no effort made on the trial to prove the establishment of this as a road by dedication except by evidence of some proceeding in about 1870. The proper statutory procedure at that time required the posting of notice on the courthouse door and in three other public places for at least 20 days and then the filing of a petition with the board of county commissioners. See R. S. 1866, c. 47, § 19.

The statute required that the petition be signed by at least 10 landowners who were residents of the county. It then became the duty of the board of county commissioners to conduct a hearing of the interested parties, and if in their judgment it appeared probable that the location or change proposed would advance the interests of the county, or was essential to the best interests of the applicant, it became their duty to appoint a commissioner to proceed to view the road proposed. If in the opinion of the commissioner the public good required this, it became his duty to lay out, mark, and plat the road. See R. S. 1866, c. 47, § 20.

Within 20 days after making the survey and location it was the duty of the commissioner to make and file his report, together with the plat and field notes, with the county clerk. After this was done a road was deemed established. See R. S. 1866, c. 47, § 21.

The record fails to disclose that all of the essential requirements of these three sections of the statute were complied with. Whether or not there was a notice acceptable under the terms of the statute; a sufficient petition; a proper hearing; or even that a commissioner was properly appointed is not disclosed. This lack of adequate information in these areas is quite likely accounted for by a failure of public officials at that time to keep proper and sufficient records of proceedings.

It is certain however that a purported commissioner made a report to the board of county commissioners. If the antecedent proceedings were proper the effect of the report made by him pursuant to the terms of section 21 was to establish this mile as a part of public highway No. 169.

While of course it is a matter of no controlling significance it is true, as is disclosed by their testimony, that the defendants Bornemeier and Todd regarded this as a part of a public highway in the county.

In the light of the record made it will be assumed, but not for all purposes decided, that this was a 1-mile portion of a previously established public highway.

Coming then to the basis on which the case was decided by the trial court, that is, on the question of whether or not the county commissioners properly refused to build the bridge or maintain the road, resort must be had to the particular facts surrounding the situation and the law applicable thereto.

The principles by which the county commissioners are to be controlled and their acts adjudged in a situation such as this are set forth in State ex rel. Heil v. Jakubowski, 151 Neb. 471, 38 N. W. 2d 26, as follows:

"In determining the character of repairs to be made to bridges, and what bridges shall be repaired, when there are not sufficient funds for all, the court will not control the discretion of county commissioners, unless there is a clear abuse of such discretion.

"It is a general principle that the building of bridges, or the making of local improvements, is a discretionary power entrusted to public and municipal corporations, and, when the proper authorities have in good faith decided, mandamus will not issue to compel them to a different course." See, also, State ex rel. Draper v. Freese, *supra;* State ex rel. Weinberger v. Gormley, 155 Neb. 242, 51 N. W. 2d 343.

The evidence indicates that this mile of highway is on the section line between Section 4 on the north and

Section 9 on the south. It is a part of a highway which apparently starts 2 miles west of these two sections and extends eastward a distance of 8 miles. This is known as highway No. 169. At the west end of this mile of highway is a usable and used north and south public highway extending in both directions well beyond any land to which this litigation pertains. It has not been made clear whether or not No. 169 west of the north and south road was in use at the time of the trial. It is reasonably inferable that the highway east of this mile was being maintained and used. There is no convincing evidence that any part of the mile was ever maintained for use or used as a public highway, except a small part of the west end. A short distance east of the west end of this mile is a creek which crosses the highway. The exact distance of the creek from the north and south highway is not shown but it appears to be less than ⅛ mile. At one time there was a bridge across this creek, but in about 1950 it was washed out and has never been replaced. Whether or not the bridge was built by the county is not disclosed. Whether or not the portion of the highway to the west was maintained by the county does not clearly appear. There was no maintenance after the bridge was washed out. There is no evidence that the bridge and the road to the west was ever used by anyone except the owner and occupant of 80 acres of land bounded by this mile of highway on the south and the west line of Section 4 on the west. In order to open this mile of highway for use it would be necessary to construct a bridge across the creek, construct three culverts, and grade the road for travel. An engineer estimated the total cost of this at $24,530. Another estimate was at least $11,000 to $12,000. A witness for appellant testified that the cost of constructing a bridge by utilizing one which had been used elsewhere would be about $2,500, and that the cost of putting the road in usable condition would be an additional $1,000. It is clear that this witness

had no real information as to costs and requirements in an instance such as this and no reliable information as to the availability of a used bridge.

There are no buildings on either side of the highway to which anyone was seeking to have access over this mile. Also there was no evidence that anyone had any purpose to do any construction work thereon which would require access. In fact no one expressed a desire or intention to use this highway if opened and maintained, except a tenant on a year-to-year basis on 80 acres of land owned by plaintiffs. This land abuts this highway to the north for a width of ¼ mile. Its west boundary is ¼ mile east of the west line of Section 4 and its north boundary is the east-west half-section line of Section 4.

The present practical reasons given for opening and maintaining the highway were that it would furnish this tenant with a shorter route over which to deliver the products of his farming operation to market; that it would furnish a shorter route for transportation of fertilizer; and that it was wanted for convenience of planting and harvesting crops. This tenant does not live on the land and his home is not in the direction of the market to which he refers but is 3½ miles to the south and 1 mile to the west of the 80 acres of land.

This tenant became such in 1959. At that time there was no access road to the 80 acres of land. The county commissioners, in order to provide access, purchased, established, and made usable an access road thereto at a cost to the county of about $1,250. This road is 2 rods in width and it extends eastward to the northwest corner of the 80 acres on the half-section line of Section 4 from the north and south road along the west side of the section. It is nowhere contended that as a road this is not satisfactory. The only complaint made about it was that since this gave an entrance way of only 16½ feet it was not of sufficient width. The record however

shows that this was corrected by the county commissioners by providing for a wider entrance way.

The only other suggested reason is that in prospect is the improvement of State Highway No. 1 and that it would be worthwhile to have this mile opened for the purpose of providing better access to that road. This of course is entitled to no present consideration.

The only present benefit which could flow from the construction of this bridge, these culverts, and the maintenance of the highway would be the purposes advanced by the tenant which have already been pointed out. The maximum advantage to the tenant would be a saving of 2 miles on a one-way trip to market and 1 mile on a trip to his residence.

In the exercise of their discretion in determining whether or not this bridge should be constructed and the other things done necessary to make this mile of highway fit for use, it was the right of the county commissioners to investigate the question of need or general demand; the work required; the cost; and the question of whether or not there are sufficient funds, in the light of the entire picture of the county road situation, to permit the demanded construction and maintenance.

As pointed out herein where, as here, county commissioners deny an application, mandamus will not lie to compel action unless there has been a clear abuse of discretion. See, State ex rel. Heil v. Jakubowski, *supra;* State ex rel. Weinberger v. Gormley, *supra.*

The question of need and utility as well as estimates of cost have been pointed out herein. In addition to this, among other things not deemed necessary to be mentioned, a single statement as to physical conditions relative to county highways and highway bridges and the financial status of the county with relation thereto demonstrates clearly that in the present instance there was no abuse of discretion. In the county, at the time of trial, there were 16 bridges washed out, condemned, and unusable. An engineer estimated the cost of re-

placement at $433,810. There was a balance of only $9,126.11 in the bridge fund. There was a total balance in the funds for road districts of $17,704.67. There was a federal matching fund of $66,496.48 of which $45,350 was already committed. It is not contended that any portion of the federal matching fund could be used for the purpose of carrying into effect the construction of this bridge or the improvement of this road.

It is further pointed out in the record that the electorate of the county in 1950 and 1952 defeated a proposal to increase the bridge levy which would have produced additional funds for the construction and reconstruction of bridges.

From this it becomes clear that there was not sufficient money available to take care of the needs of the county in this area.

In the light of all of these considerations it may not be said that the county commissioners abused their discretion by their refusal to build the bridge and to maintain this mile of highway. The writ of mandamus was properly denied.

The judgment of the district court is affirmed.

AFFIRMED.