BENT LARSON, APPELLEE, V. GUSTAVE ANDERSON, APPELLANT.

FILED SEPTEMBER 20, 1905. No. 13,844.

1. **Adverse Possession: TACKING.** Where during his lifetime a husband took possession of certain real estate, claiming title thereto, and lived upon the same with his wife and family as his home, and before the ten-year period of limitation expired the husband died, leaving his widow who continued to reside upon the same as her home, the possession of the widow may be tacked to that of the husband so as to raise the bar of the statute of limitation. *Montague v. Marunda*, 71 Neb. 805.

2. ———: ———. In such case the possession of the widow is a continuation of the adverse possession of the husband, and will not be presumed to be adverse to the claims of their children and heirs.

3. **Possession, by Widow: PRESUMPTION.** The widow's right to possession is by virtue of the marital relation, and will not be construed to be independent and hostile to that of her husband's heirs, unless by some means she brings to their attention the fact that she claims to own the property in her own right and adversely to any right derived through her husband.

4. **Estoppel.** Where one by his words or conduct wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.

APPEAL from the district court for Sarpy county: GEORGE A. DAY, JUDGE. *Affirmed.*

*William R. Patrick* and *Samuel L. Winters,* for appellant.

*J. O. Detweiler, contra.*

LETTON, C.

This is an action to quiet the title to a certain tract of land lying in Anderson's addition to the village of Bellevue, Nebraska. This tract consists of a part of block 10, and all of blocks 11 and 12 in said addition, together with the streets lying between said blocks. The plaintiff alleges that on November 16, 1887, and for more than three years prior thereto, one Anna C. Carlson and Andres Carlson, her husband, were the owners of this property; that their title to block 11 was by deed, and to the remainder of the premises by adverse possession of Anna C. Carlson for more than ten years; that said parties executed a mortgage on block 11, which was afterwards foreclosed, and the title to the same conveyed through said foreclosure proceedings to one Martin, and from him to one Charles G. Anderson who conveyed the same to the plaintiff; that after the title of Anna C. Carlson to the remainder of the property by adverse possession had become complete, she conveyed the same to Charles G. Anderson who conveyed to the plaintiff; that the defendant Gustave Anderson claims title to the premises, and plaintiff prays for a decree quieting title as against said defendant. The defendant answers, claiming title to the premises, averring that his father, Andres Carlson, took possession of the property in 1882, and held the same adversely to all persons until his death in 1890; that after his death the defendant himself went into possession of the same by virtue of his right as heir at law of his said

father, and that ever since said time he has been in adverse possession of the same, subject to the homestead and dower rights of his mother, Anna C. Carlson. He prays that the action be dismissed and the title to the premises quieted in the defendant. The reply is a general denial, coupled with an allegation that plaintiff's grantor, Charles G. Anderson, purchased the premises upon the defendant's representation that he would get an absolute title by buying from Anna C. Carlson, the defendant's mother; that Charles G. Anderson did so in reliance upon said representations, and that the defendant is estopped by such conduct to claim any title in the premises. The district court found in favor of the plaintiff and entered a decree accordingly, from which decree the defendant has appealed.

In 1883 Andres Carlson, the father of defendant, Gustave Anderson, and the grandfather of Charles G. Anderson, who is the son of Gustave, bought a tax certificate upon block 11, and soon after took possession of part of block 10, all of 11 and 12, and the streets lying between, inclosing the same with a fence and building a small house upon the tract. He lived upon the premises with his wife, Anna Carlson, as his home, claiming title to the same, until October, 1890, when he died. His wife continued to live there until March, 1902, when, on account of her frail physical condition, she went to the plaintiff's house, where she died in December, 1902. In his lifetime Andres Carlson and wife executed a mortgage on block 11. Upon a foreclosure of this mortgage the property was sold, bid in by Martin, the mortgagee, and sold by him to Charles G. Anderson, who afterwards conveyed the same to the plaintiff. As to this portion of the property there seems to be no room for disputing the plaintiff's title. So, also, as to a portion of block 10 described in a deed to plaintiff in which defendant joined. This conveyance is unimpeached, and the plaintiff's title seems clear, as against the defendant.

As to the remaining property, the only title shown

in any of the parties is a title derived by the adverse possession of Andres Carlson for seven years before his death and of his widow and heirs since that time. This brings us to the only question of moment in the case, and that is whether the possession of Mrs. Carlson after her husband's death operated to vest the title to the premises in her by adverse possession, or whether her possession was only a continuation of the adverse possesion held by her husband so that the legal effect would be the same as if her husband had lived throughout the statutory period. In other words, did she hold adversely to all the world, including her husband's heirs, or did she hold adversely only as against the same persons to whom her husband's possession was adverse? The presumption is, in the absence of any evidence, that where the title to a homestead is in the husband, and the widow remains in occupation of the homestead after her husband's death, she claims by virtue of her homestead right, and her possession will not be construed to be adverse to the rights of the heirs, unless by some act on her part she indicates her intention to hold adversely to them. In the present instance it appears that Mrs. Carlson, after having been appointed administratrix of her husband's estate, took some steps to have a homestead set apart to her by the county court, though no order setting the same apart was ever made, so far as the evidence shows. In her application for license to sell real estate to pay debts, she sets forth the real estate belonging to her husband, including that in controversy, alleges that the portion involved in the action had been set apart to her as her homestead, and asks leave to sell the other real estate belonging to the deceased for the payment of his debts. This evidence strongly militates against the plaintiff's claim that she held the premises, claiming title independent of her husband's estate therein and adversely to all persons, including her husband's heirs, and the evidence taken as a whole fails to establish this contention. The plaintiff's title to this portion of the premises is derived

through a deed from Mrs. Carlson to her grandson, Charles G. Anderson. We are convinced from the evidence that the only title she had thereto was the right derived from her husband's occupancy of the premises, and which, through her occupancy of the same as a homestead subsequent to his death, ripened into a perfect title in her husband's heirs, subject to her life estate. *Montague v. Marunda,* 71 Neb. 805. The plaintiff contends that the defendant requested Charles G. Anderson to purchase the property from his grandmother, and represented to him that she owned it all, and that since his son relied upon these statements in the purchase the father is now estopped from claiming any right to the premises, and therefore has no title to the same. The evidence to sustain this contention is virtually undisputed. The father urged the son to buy from his grandmother, stating that she owned the property and could give a good deed to it. The son then made the agreement that he would care for the old lady until she died in consideration for the transfer of the land. The defendant did not disclose at that time that the only estate his mother, Mrs. Carlson, had was her life estate by virtue of her homestead right, or that he claimed any title to the land, and at his request and relying upon his representations the son took the title. Having thus induced the son to assume the burden of his grandmother's care in consideration for the transfer of a good title to the premises, he cannot now be permitted to speak and claim a title that he then disowned. He afterwards concurred in this disposition of the property, living upon the land, acknowledging this son's title, and paying taxes upon it in his son's name, and it is now too late for him to change his position to his son's detriment.

The judgment of the district court is right and should be affirmed.

AMES and OLDHAM, CC., concur.

**By the Court:** For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.