## JOHNSON *v*. JOHNSON.

### Opinion delivered December 2, 1912.

1. CONVEYANCE TO DEFRAUD CREDITORS—RIGHT OF WIDOW—A widow has no dowable interest in lands bought by her husband, when he takes title in the name of a third party in order to defraud creditors, for the reason that he had no estate of inheritance in the same. (Page 11.)

2. ADVERSE POSSESSION—DOWER.—But when a husband purchases land and takes title in the name of a third party in order to defraud his creditors, and goes into possession of the land, clearing and cultivating it for a period of six years, and the widow continues in possession two years under section 2704 Kirby's Digest, her possession is in privity with and tacks to that of her husband, giving his heir's title by adverse possession and entitling the wife to have dower and homestead in the same assigned to her. (Page 13)

3. DOWER AND HOMESTEAD.—RIGHT OF WIDOW—Dower and homestead shall be assigned to the widow only in the house and farm lands which have been enclosed and occupied as a farm. (Page 14.)

Appeal from Lincoln Chancery Court; *John M. Elliott,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

The appellant instituted this action in the Lincoln Chancery Court to have homestead and dower assigned to her in certain lands situated in Lincoln County, Arkansas, which she described in her complaint. She alleged that she was the widow of Jarrett Johnson, who died intestate March 21, 1908; that he left surviving the appellees who were his sole heirs at law; that he was seized of an estate of inheritance in the lands described, having purchased the same on or about the first of November, 1901; that he had the title placed in Aaron Moorman and Mittie Moorman, as trustees; that from the time of his purchase until his death in 1908 Jarrett Johnson lived upon said land, cultivated a portion of it and exercised an exclusive supervision over all of it as his own property; that after the death of Jarrett Johnson, Jarrett Johnson, Jr., and Wm. H. Johnson forcibly took possession of the said lands, holding the same against plaintiff and refusing to account to her for any rents or profits; that she had demanded her dower and homestead but had never received either. She further alleged that Aaron and Mittie Moorman, after the death of Jarrett Johnson, for the purpose of defeating the rights of the

plaintiff to homestead and dower in the lands, conveyed the same to the defendants without any valuable consideration. She prayed that the deed executed by Aaron and Mittie Moorman be set aside and cancelled as a fraud upon her rights; that the title to the land be declared in the defendants, subject to the rights of homestead and dower in the plaintiff. She prayed for an accounting of the rents and profits, and that the defendants be restrained from committing waste upon the lands, and that her homestead and dower rights be assigned her. The appellees, in their answer, admitted that the plaintiff was the widow of Jarrett Johnson, their father, at the time of his death. They admitted that they were in possession of the lands, and alleged that they claimed the same as purchasers and not as heirs of Jarrett Johnson. They denied that their father died seized of an estate of inheritance in the lands (describing the same), and denied that the plaintiff, by virtue of her marriage with their father, was entitled to dower and homestead in the lands.

The court dismissed the complaint for want of equity, and the appellant duly prosecutes this appeal.

*Asa C. Gracie* and *W. K. Toney,* for appellant.

The evidence in the case is sufficient to establish a resulting trust in the Moormans, and if a trust existed in them, appellant is entitled to dower and homestead. Under the testimony and in view of all facts developed in evidence, the title should be vested in appellees subject to the rights of the widow to homestead and dower. 9 Ark. 518; 11 Ark. 82; 27 Ark. 87; 29 Ark. 612, 630; 44 Ark. 365; 45 Ark. 481; 40 Ark. 62; 48 Ark. 169; 64 Ark. 155; 70 Ark. 145; 98 Ark. 452; 31 Ark. Law Rep. 554; 15 Am. & Eng. Enc. of L. (2 ed.) 1132; 14 Cyc. 909-912, note 23; 26 Ark. 368; 21 Cyc. 508; 40 Ark. 69.

*Crawford & Hooker,* for appellee.

The evidence is entirely wanting in that fullness and certainty necessary under the rule to establish a resulting trust. 75 Ark. 446; 89 Ark. 182.

A fraudulent conveyance is good as between the parties. If the title to the land in this case was taken in the name of the Moormans for fraudulent purposes, even though the consideration was paid by the deceased, he could never in his

lifetime have invoked the aid of law or equity to secure in himself title to the lands. 11 Ark. 411; 47 Ark. 301; 43 Ark. 84; 52 Ark. 389; *Id.* 171; 1 L. R. A. (N. S.) 1007. His privies could not maintain suit after his death. 13 L. R. A. (N. S.) 1118. See also 74 Ark. 276; 77 Ark. 60; 19 Ark. 650; 13 Ark. 595.

WOOD, J., (after stating the facts). 1. It could serve no useful purpose to set out the evidence, which is voluminous. It tends to show that Jarrett Johnson, Sr., purchased the land in controversy about the 24th day of November, 1902, and had the title thereto taken in the name of Aaron Moorman and Mittie Moorman. Johnson furnished the purchase money and had the title put in the name of Aaron Moorman and his sister, Mittie Moorman, for the purpose of defrauding his first wife, from whom he was seeking to obtain a divorce, and also for the purpose of defrauding certain creditors who had a judgment against him. Under these circumstances there was no resulting trust in favor of Johnson. Although Johnson furnished the purchase money, as he had the conveyances of the land made to third parties for the purpose of defrauding creditors, he had no estate in the land, legal or equitable, that he could set up.

"A conveyance to defraud creditors is good between the parties and against all persons except creditors of the grantor who are in position to assail it." *Bell* v. *Wilson,* 52 Ark. 171. See also, *Martin* v. *Taylor,* 52 Ark. 389; *Millington* v. *Hill,* 47 Ark. 301.

In the case of *Moore* v. *Walstein,* 74 Ark. 273, the court said: "Before the act of 1895 no one except creditors could set aside a deed to defraud them. It was valid as to all other persons. * * * The act of 1895 made a change of this condition of affairs, to the extent of allowing a fraudulent deed to be set aside for the benefit of the heirs at law. This is the only change made."

We have no statute allowing a fraudulent conveyance of a husband to be set aside for the benefit of the widow so as to preserve her dower in lands so conveyed. In the absence of such statute, the widow has no dowable interest in such lands for the reason that the husband, at the time of his death was not seized of any estate of inheritance, either in law or

equity, in lands that had been by him conveyed in fraud of creditors.

The case of *King* v. *King, et al.,* 61 Ala. 479, is very similar to the case at bar. King purchased lands, having the deeds made in the name of third parties for the purpose of covering up the property so that it could not be made subject to his liabilities. He took possession of the property, made improvements and repairs thereon and received the income thereof as his own. Mrs. King, the widow, sued for dower in the lands. The court held (quoting syllabus) that, "A conveyance to hinder, delay and defraud creditors, is voidable as to them, but valid as to the parties to it; and where by such a conveyance the husband, without intending any fraud on his future wife, divests himself of all estate and use in the lands, nothing is left out of which dower can be carved and the future wife claiming through him at his death, can not dispute the validity of the conveyance, or have a court of equity engraft any use or trust on the lands, based on the husband's fraud, out of which to carve dower." See also, *Gross* v. *Lange,* 70 Mo. 45; *Thomas Miller* v. *Margaret Wilson, et al.* 15 Ohio, 108; Bump. on Fraudulent Conveyances, p. 481.

2. The complaint alleged that "from the time he purchased said land until his death in 1908, Jarrett Johnson lived upon said land, cultivated a portion of it and exercised an exclusive supervision over all of it as his own property."

Johnson was living on the land at the time of his death. The Moormans had never had possession of it, or exercised any acts of ownership over it previous to his death. On the contrary, the evidence shows that Johnson, from the time of his purchase, was in possession of and exercised control over it by making improvements on it and using and enjoying the place as his own to the exclusion of every one else. The testimony shows that he had "lived on the Boon Lake place (the one under consideration) for eight or ten years before he was killed." In 1906 we find him conveying the property to his son, Henry Johnson, and then in 1907, Henry Johnson conveyed the same property back to Jarrett Johnson. The possession was never changed.

· After his death his widow, the appellant, continued in possession of the place, renting the same during the years

1908 and 1909 to William and Jarrett Johnson, taking their notes for the rents in the sum of $1,000, on which she afterwards recovered judgment for the balance due thereon of $500. And in 1910 William and Jarrett Johnson took possession of all the land except the house and yard where appellant lived refusing to attorn to her or to recognize her rights of homestead and dower in the land.

These facts warrant the conclusion that the appellant was entitled to homestead and dower in the lands. Her husband, at the time of his death, was in the adverse possession of the lands holding the same as his own, and his possession had so continued for a period of at least six years, and the widow continued in possession for two years thereafter.

At common law the widow had no title, seisin or right of entry as dowress until the assignment of dower. Therefore she could not tack her continued adverse possession after the death of her husband to his possession before that time to give the heirs title by adverse possession. *Sawyer* v. *Kendall*, 10 Cush. 241; *McIntire* v. *Brown*, 28 Ind. 347; 1 Cyc. pp. 1005-6.

But our statute enlarges the rights of the widow by providing that she may remain in the mansion or chief dwelling house, together with the farm thereto attached, until her dower shall be laid off and assigned to her. Kirby's Dig., § 2704. Under this statute her possession is in privity with that of her husband and she may tack it to his to give the heirs title by adverse possession and have dower assigned. *Atwell* v. *Shook*, 133 N. C. 387, 45 S. E. 777; *Larson* v. *Anderson*, 74 Neb. 361, 104 N. W. 925; *Mieke* v. *Dodge*, 115 N. W. 1099.

In *Stricklin* v. *Moore*, 98 Ark. 30, we held that the adverse possession of the husband as tenant by the curtesy, coupled with the adverse possession of his wife, constituted an investiture of title in the heirs of the wife. So here, by analogy, the adverse possession of Jarrett Johnson, Sr., coupled with the statutory right of homestead and dower in his wife, giving her the right to retain possession of the mansion house and lands adjoining, constituted an investiture of title in the heirs of Jarrett Johnson, Sr.

The appellant is not asking or claiming any interest in the lands except her dower and homestead right. She is not

setting up any title adverse to the appellees as heirs of Jarrett Johnson, Sr.

On the contrary, she prayed that the title "be declared in the defendants, subject to the rights of homestead and dower in plaintiff."

According to the principles above announced, she acquired the right to hold adversely as against the Moormans (who held the legal title) or any one claiming title and the right of possession under them to the mansion house and the farming lands adjoining. Appellees alleged in their answer that they were in possession of the lands and claimed the same as purchasers from the Moormans, and not as heirs of Jarrett Johnson.

It follows that the appellant was entitled to have her homestead and dower assigned in the mansion house and the farm thereto attached. The farm attached shall only include the lands that have been inclosed, and that have been occupied as a farm; it does not include lands that are uninclosed and that have not been used as farming lands. The decree is therefore reversed and the cause remanded with directions to the chancery court to proceed to allot to appellant her homestead and dower in these lands according to law and not inconsistent with this opinion.