FRED PLISCHKE ET AL., APPELLEES, v. CHARLES A. JAMESON, APPELLANT.

146 N. W. 2d 223

Filed November 4, 1966. No. 36250.

Andrew J. McMullen, for appellant.

Dier & Ross, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and MANASIL, District Judge.

SPENCER, J.

This is an action to adjudicate the ownership of land along the west half of the east and west half-section line in Section 27, Township 10 North, Range 17 West of the 6th P.M., in Buffalo County.

The plaintiffs, Fred Plischke and Neta Plischke, who will hereafter be referred to as plaintiffs, are the owners of the north half of said section, and defendant Charles A. Jameson, who will hereafter be referred to as defendant, is the owner of the north half of the southwest quarter thereof. The trial court found that a 66-foot road had been established along the half-section line and that subsequent thereto a road 20 feet wide was established by prescription somewhat in variance to the road as laid out along the half-section line. The court also found that by action of the county board both roads were vacated in 1963, that no provision was made as to the disposition of the land covered by either road, and that under the provisions of section 39-1725, R. R. S. 1943, title thereto remains in Buffalo County until a period of 10 years of nonuse has elapsed. The court further quieted title to a strip of land south of the 66-foot road and on the east 734 feet thereof in the defendant. Defendant has perfected an appeal to this court.

Defendant purchased his property in July 1947. At

that time there was a fence running diagonally north-east for a distance of 1,873.5 feet from a point 9.5 feet north of the west quarter corner to a point 52.5 feet north of the half-section line. At that point the fence jogs 18 feet south. An 18-foot gate constitutes the fence at this jog. The fence then runs from the south end of the gate generally east 734 feet to a point 47.6 feet north of the east-west half-section corner. At the time defendant purchased his property there was a trail road approximately 10 feet wide running generally parallel to and south of the fence to the gate described heretofore. It then passed through the gate and thereafter was north of the fence. The area east of the gate and south of the fence is the area to which title was quieted in the defendant. Defendant claims the property south of the entire fence as being a part of the property purchased by him. At the time of his purchase in 1947 one of the hog sheds in the east portion of the property was against and directly south of the fence. A granary on the property was also located directly on the half-section line.

Plaintiffs purchased their property in 1953 but had farmed it for several years previously. In 1950, defendant sank an irrigation well north of the half-section line and 16 feet south of the fence. The location is not exactly described but appears to be approximately 1,320 feet east of the west quarter corner and directly south of the trail road. At that time Fred Plischke complained of the location of the well and had a survey made. This was at a time when he was still a tenant on and previous to the time Plischkes purchased the property. The survey showed the well to be located north of the half-section line, and that the half-section line ran through the middle of defendant's granary. Fred Plischke called defendant's attention to the result of the survey but defendant claimed the property between the half-section line and the fence as being a part of his property because the fence had always been accepted as the half-section line.

Subsequently, plaintiffs purchased their property. This present action was filed May 13, 1965.

Sometime previous to August 1880, a road petition was filed for the location of a county road, commencing at the northwest corner of Section 27, Township 10, Range 17, running thence south one-half mile to the quarter stake, and thence one-quarter mile east and from thence "a most straight and most practicable road" to the southeast corner of Section 36. Pursuant thereto, the county surveyor was appointed by the commissioners to view and locate the road and to report thereon. He reported favorably and the county board on August 23, 1880, "granted the petition and directed said road to be recorded as laid down in report * * *." A plat attached to the report of the surveyor would indicate that the road was to run one-half mile east rather than one-fourth mile east as set out in the petition. There is nothing further in the record to indicate exactly where the road was located or that it actually was located on the half-section line. The former surveyor and the present deputy surveyor, who were called by the plaintiffs, could not testify that the road actually was located on the half-section line. The only road they were familiar with was the trail road described above. A witness for the defendant, who was on the property for a week in 1897, testified that the road at that time was just a wagon-wheel trail, and is in the same place now as when he used it in 1897.

On the facts, it is apparent that the defendant at the time of purchase, and his predecessors in interest thereto, considered the fence as the half-section line. It is also true, as defendant argues, plaintiffs did not elicit any evidence that they or their predecessors in interest ever held possession of any part of the property south of the fence. The record indicates that all repairs to the fence were made by the defendant. If the case were not complicated by a road through the area, under the authority of Ohme v. Thomas, 134 Neb. 727, 279 N. W.

480, defendant would clearly have title to the land between the actual half-section line and the fence. The case holds: "Where a fence is constructed as a boundary fence between two properties, and where the parties claim ownership to the fence for the full statutory period of ten years, and are not interrupted in their possession or control during that time, they will, by adverse possession, gain title to such land as may have been improperly inclosed with their own."

While the evidence that a road was ever actually established on the half-section line is incomplete and not entirely satisfactory, the request by the property owners in 1880 for a road did so locate it, and the drawing attached by the surveyor would indicate it was so located. However, the survey notes on the drawing could be interpreted to place the road 80 feet north of the half-section line if the section is actually a full mile north and south. The record does indicate that on August 23, 1880, the county commissioners did grant the request for and directed the location of a road near the point in controversy. Defendant does not dispute this fact. He insists, however, that if a road was ever laid out, it was abandoned before 1897 when his witness used the trail road, and locates it at the approximate location of the one in use when defendant purchased the property. It might be noted that all portions of the road described in the 1880 petition except that located on Section 27, were vacated and erased from the road record book at sometime in the distant past. The road record book does not indicate the date of said vacation.

The law is well established that it is not possible to acquire title to a public road against a county by adverse possession. See Krueger v. Jenkins, 59 Neb. 641, 81 N. W. 844, in which we said: "Title to a part of a country road can not be acquired by adverse possession."

Defendant argues that the petition for the road in 1880 did not describe the width thereof, and he disputes the intent to establish a road 66 feet in width. However,

the law at that time established the width of all public roads. G. S. 1873, c. 67, § 3, p. 951, provides: "All county, state, and other public roads shall have a width of sixty-six feet, * * *." The trial court properly determined that a public road 66 feet in width was dedicated along the half-section line in question.

The evidence is undisputed that a trail road not to exceed 10 feet ran generally parallel to and south of the fence. This road was used mainly by the parties or by a landowner to the east or his tenant, but occasionally was used by other members of the public. For the first approximately 1,050 feet of its length to the northeast, it is located within the area of the public road described above. From that point on, a portion of the trail road is north of the public road. From the point where any part of the trail road extends beyond the public road there is little question a road was established by prescription. A public highway may be established by prescription by continuous adverse use thereof by the public for a period of 10 years. Kunz v. Bornemeier, 170 Neb. 463, 102 N. W. 2d 842. The evidence in this case is that the trail road was used for a much longer period. Even the plaintiffs' evidence shows its existence unchanged since 1941 when they became familiar with it.

On the authority of State ex rel. Game, Forestation & Parks Commission v. Hull, 168 Neb. 805, 97 N. W. 2d 535, the trial court determined the prescriptive portion of the trail road to be 20 feet wide. In that case, we held: "If the public has acquired the right to a highway by prescription, it is not limited in width to the actual beaten path but the right extends to such width as is reasonably necessary for public travel." In that case, we determined that the record supported an easement of 20 feet for a frequently-used sandhills road.

The record in this case conclusively establishes that the trail road was never more than a one-vehicle road. The defendant fixed its maximum width at 10 feet, and this is undisputed. For the restricted use of this trail

road apparent from the record, a width of 16 feet would be ample.

It is obvious that the trail road was located at some distance south of the fence. It is impossible to determine this exact figure from the record. We conclude, however, that such area must have been a minimum of 3 feet. We determine therefore that the area up to 3 feet south of the fence where it leaves the public road along the half-section line south to the jog described heretofore, and an area of 3 feet north of the fence for the remaining distance of 734 feet to the north-south half-section line, is no part of the prescriptive road. With the exceptions noted herein, we affirm the trial court's location of the trail road.

We determine further that title should be quieted in the defendant to all land south of the fence line not actually embraced in the public road or in the prescriptive road as described above. This would include any portion up to 3 feet of the area paralleling the fence line on the south after it leaves the public road.

For the reasons given, we affirm the judgment of the trial court as to the location of the public road and the effect of its vacation as well as the quieting of title in the defendant to the area along the east 734 feet of said public road, but remand the cause with directions that the judgment be reversed as to the width and location of the prescriptive road as noted, and that judgment be entered in conformity with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.