LLOYD S. WHALEY, APPELLEE, V. MILDRED F. MINGUS, APPELLANT, IMPLEADED WITH G. F. LUTHER, APPELLEE.

196 N. W. 2d 516

Filed April 20, 1972. No. 38144.

Stewart & Stewart, for appellant.

Cook & Cook, for appellee Whaley.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

This case involves the ownership of 24.4 acres of land situated in the former bed of the Platte River in Dawson County, Nebraska. The plaintiff claims ownership by accretion to land owned and held under deed, while the defendant Mingus claims ownership of the same land by right of adverse possession. The district court entered judgment quieting title to the land in the plaintiff.

Plaintiff purchased his property in 1948. The defendant and her husband acquired their property in 1943, and defendant is now the owner. The two tracts adjoin. The accretion land involved here lies to the

north of the deeded lands. It is a triangular-shaped tract lying between the surveyed boundary and a line on which the defendant claims to have constructed a fence in the year 1948. The land is not cultivated, but has some brush and trees on it.

Defendant's evidence was that the fence was built with some small posts, one or two strands of used barbed wire, and the wire was nailed to trees where possible. Defendant's evidence was that the fence started some 200 feet north of the north boundary line of the defendant's deeded property and went out northerly to the river, a distance of some 1,500 feet. The defendant's evidence was that the fence was maintained from the time of its construction in 1948 until 1961. Defendant's evidence as to other acts of ownership on the disputed land was that they planted some grass in 1948; pastured sheep in 1950 and 1951 for 2 or 3 hours at a time; cleaned up tin cans and branches at various times; and maintained a duck blind near the northeast corner of the disputed land and hunted from the blind from 1948 on for more than 10 years.

Witnesses for the plaintiff, who were for the most part residents of the immediate area, sharply contradicted the defendant's evidence. Their evidence was that many people used the land for hunting and recreation without asking permission from anyone; that they had not seen any fence, nor could it be seen from the road; and that they had never seen any sheep pastured on the land. One witness, thoroughly familiar with the area, testified that he had trapped, hunted, or seined minnows in the area every year since the year 1949 and was completely unaware of any fence along the line claimed by the defendant.

The plaintiff viewed the land in the fall of 1948 and plaintiff's business manager stated that he had gone into the river bottom in the area after stray cattle on several occasions. Neither of them had ever seen the

fence nor were they aware of the defendant's claim until 1967.

In 1965, the county surveyor made a survey along the fence line claimed by the defendant. He found barbed wire grown into one tree approximately 200 feet northeast of the northeast corner of the defendant's deeded property; one other tree with barbed wire grown into it some 90 feet northeast of the first tree; and a single strand of barbed wire running from that tree approximately 100 feet northeast. He found no evidence of more than a single strand of barbed wire and only at the places indicated.

The district court viewed the premises in 1970 and inspected the fence line claimed by the defendant. He found no sign of any fence closer than 200 feet from the northeast corner of the defendant's deeded land. After the evidence of a former fence extending over approximately 200 to 250 feet as testified to by the county surveyor, the court found no further evidence of any fence from that point to the present flowing stream of the river, some 1,800 feet further to the northeast.

The trial court set out his findings and the evidence in a thorough and detailed memorandum. We think it clear that the critical issue here involves the facts and not the law. The primary test of adverse possession is the actual, continuous, open, notorious, and adverse possession of the property under claimed ownership during the 10-year period required by the statute. It is the visible and hostile possession, with an intention to possess land occupied under a belief that it belongs to the possessor, that constitutes its adverse character. Ordinarily the hidden or remote view or belief of the possessor in taking possession does not relate itself to the adverse character of the possession. Purdum v. Sherman, 163 Neb. 889, 81 N. W. 2d 331.

The real purpose of prescribing the manner in which an adverse holding will be manifested is to give notice to the real owner that his title or ownership is in danger

so that he may, within the period of limitation, take action to protect his interest. It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he takes possession. Purdum v. Sherman, *supra*.

To be effective against a true owner, acts of dominion over the land must be so open, notorious, and hostile as to put an ordinarily prudent person on notice of the fact that his lands are in the adverse possession of another. Krumwiede v. Rose, 177 Neb. 570, 129 N. W. 2d 491; Mentzer v. Dolen, 178 Neb. 42, 131 N. W. 2d 671.

The determination of the issues here rests primarily upon the facts. The evidence was conflicting. The trial court viewed the premises and saw and heard the witnesses. The record fully supports his determination.

The judgment is affirmed.

AFFIRMED.