RODNEY PETSCH, APPELLEE, V. EVA MAE WIDGER
ET AL., APPELLANTS.

335 N.W.2d 254

Filed May 20, 1983.  No. 82-240.

David A. Bergin of Cunningham, Battershell, Shoemaker & Bergin, P.C., for appellants.

Terry E. Savage, for appellee.

BOSLAUGH and CAPORALE, JJ., and SPENCER and BRODKEY, JJ., Retired, and GRANT, D.J.

BRODKEY, J., Retired.

Rodney Petsch, the plaintiff below and the appellee in this court, brought this action in the District Court for Chase County pursuant to Neb. Rev. Stat. § 34-301 (Reissue 1978) for the purpose of establishing the south boundary line to real property belonging to Petsch and the north boundary line to real property belonging to Eva Mae Widger and the other defendants below. So far as material herein, that statute provides: "When one or more owners of land, the corners and boundaries of which are lost, destroyed or in dispute, desire to have the same established, they may bring an action in the district court of the county where such lost, destroyed or disputed corners or boundaries, or part thereof, are situated, against the owners of the other tracts which will be affected by the determination or establishment thereof, to have such corners or boundaries ascertained and permanently established. . . . The action shall be a special one, and the only necessary pleading therein shall be the petition of the plaintiff describing the land involved, and, so far as may be, the interest of the respective parties and asking that certain corners and boundaries therein described, *as accurately as may be*, shall be established. Either the plaintiff or defendant may, by proper plea, put in issue the fact that certain alleged boundaries or corners are the true ones, or that such have been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years, which issue shall be tried before the district court *under its*

*equity jurisdiction* without the intervention of a jury, and appeals from such proceedings shall be had and taken in conformity with the equity rules." (Emphasis supplied.) We have also held that adverse possession is recognized as a defense in a proceeding under this section. *Converse v. Kenyon*, 178 Neb. 151, 132 N.W.2d 334 (1965). In his petition filed in the District Court, Petsch alleged that he is the owner in fee simple of certain real property in Chase County, Nebraska, bounded on the south by real property owned by the defendants-appellants in fee simple. He further alleged: "That on March 31, 1978, and again on August 5, 1980, a survey of the South line of the North Half of the North Half (N½N½) of Section 4, Township 6 North, Range 36, was made by Marvin Athey, Chase County Surveyor. Plaintiff alleges that that survey establishes the true boundary and that it conforms to the boundary established by the original Government survey. A copy of said survey is attached thereto and incorporated herein by this reference." Plaintiff prayed that the court "enter an order establishing the South line of the North Half of the North Half (N½N½) of Section 4, Township 6 North, Range 36, West of the 6th P.M., Chase County, Nebraska, to conform to the original Government survey and the subsequent surveys alleged by Plaintiff to show the true boundary between the tracts owned by the parties."

In their answer to the foregoing petition, the defendants denied that the Athey survey line was the true and correct boundary between the tracts of real property, and alleged that a fence located north of the Athey survey line was the true and correct boundary between the tracts of real property, and in connection therewith further alleged: "That defendants have had actual, continuous, exclusive and notorious adverse possession under a claim of ownership of all property south of said fence, which may now have been removed by Plaintiff, for a period of more than Ten (10) years. Therefore, title to said

real property south of the fence should be found to be in the Defendants." They further alleged that by and through their lessee, one Orville Widger, they have harvested hay on certain property north of the alleged boundary, which hay harvesting has continued for a period of more than 10 years, and that they have had actual, continuous, exclusive, notorious, and adverse possession under a claim of ownership of said parcel upon which the hay has been harvested for more than 10 years; therefore the title to said parcel upon which the hay has been harvested should be found to be in the defendants. In their answer the defendants pray that the court enter an order establishing the aforementioned fence as the real and true boundary between the two parcels of real estate and also enter an order that the title to the parcel " 'upon which hay has been harvested' as shown in an attached photograph, is found to be in the Defendants." Petsch filed a reply to the answer of the defendants in the nature of a general denial.

Following a trial to the court, at which evidence was adduced by both the plaintiff and the defendants, the court held that the Athey survey line should be established as the boundary between the two tracts of real property. The defendants then perfected their appeal to this court, their assignments of error being (1) that the court erred in determining that the boundary line should be established as the Athey survey line, and (2) that the court erred in determining that the defendants had not acquired title to the real property between the Athey survey line and the fence line by adverse possession. We affirm.

As an aid to understanding the issues in this case, and for purposes of convenience and illustration only, we have prepared a diagram of the area involved, which contains information taken from the exhibits offered at the trial. As shown, the two major landmarks in Section 4 are the county road and Spring Creek. The southern ditch of the county

road, until it veers south, marks the undisputed portion of the southern boundary of the north half of the north half. The disputed portion of the southern boundary is east of the southward turn in the road. It begins with the fence, shown on the diagram as a dashed line interspersed with "Xes," and extends to the eastern boundary line of Section 4.

Petsch claims that the Athey survey line, which appears on the diagram as a line extending east from the county road, was the true southern boundary of his property. The Athey survey line was established according to "common survey practice" and approximated, as nearly as possible, the original government survey line. Defendants, who we shall hereafter refer to as Widger, did not claim that the line was improperly surveyed, but rather claim to have acquired the land north of the Athey survey by adverse possession. In particular, Widger claimed land up to the fence and land in the triangular area from which he had harvested hay. The

fence's western end was described as "very close" to the turn in the road and at that point was 27.85 feet north of the Athey survey line. On its eastern end, the fence apparently did not reach Spring Creek and at that point was 43.25 feet north of the Athey survey line. The fence was estimated to be between 1,000 and 1,300 feet long. A description even less specific than that given for the fence was given for the triangular area from which Widger claimed to have harvested hay. The description given in Widger's answer was "the parcel 'upon which hay has been harvested.' " The location of this parcel was indicated by a hand-inscribed triangle superimposed on the photocopy of an aerial photograph attached to the answer. No legal description or description by measurements of the hayfield is contained in the record of this case.

It is very important to note that the fence indicated on the diagram referred to above was not the fence originally constructed in the area. The fence indicated on the diagram was not constructed until after Petsch had purchased the property in March of 1977, and hence had been in place for no more than 4½ years at the time of the trial. Although the original fence was apparently in existence for more than 10 years, the date of its original erection was not known and is not shown in the record. It was apparently destroyed about the time that Petsch purchased the property, although there was a conflict in the evidence as to whether this was before or after his purchase.

In deciding this case the trial court stated in part: "Well, I suppose that the parties probably understand from the questions of the court that the problem which concerns me is, first, a person who asserts land under adverse possession bears a terrific burden. He bears a burden to show that the possession is adverse and hostile. Now, that doesn't mean, as Mr. Bergin has said, you don't have to sit there with a gun and hold everybody off. But it does

mean that a possession must be a definite, specific possession of a specific area. And it must be describable by survey means. Now, that doesn't mean that we can't use the Athey survey and say so many feet from his particular line. But it does mean that it has to be a definite figure.

"Now, if we go on the start of the fence I believe that there is some evidence as to about how many feet that fence may be from the survey line, and I am speaking of the original fence, because the second fence doesn't, — that can't be a 10-year possession fence because it has only been there for two years, or three years, or at least not 10 years. That isn't an adverse line. The adverse line is the original fence. The original fence only went east so far, and the best we could come up with is that it went to someplace short of Spring Creek. And then we have an unknown line, at least it is unknown to me to the east corner where we have a corner fence that has been testified to without it being tied-in into either the Athey survey or any other survey whereby the court can make a legal description of the tract to which we are quieting the title on behalf of the defendants.

"It's, as I say, the person claiming by adverse possession has this terrific burden to show specific property claimed for a specific time from beginning through the end and it being more than ten years.

"I just wouldn't know where to draw the line. I can't draw it and particularly from the east side of the fence, which has not been located, to the east boundary. I don't know where it is.

. . . .

"Therefore, it's my feeling that we can't do anything in this case but go on the Athey survey." From what we have quoted above, it is clear that the primary reason the court ruled against the defendants was because of the insufficient description of the adversely claimed property; and we agree with the court that the description of such property

claimed by adverse possession was insufficient under established law in Nebraska.

In *Layher v. Dove*, 207 Neb. 736, 739, 301 N.W.2d 90, 92 (1981), we stated that an adverse claimant "must show the extent of his possession, the exact property which was the subject of the claim of ownership, that his entry covered the land up to the line of his claim, and that he occupied adversely *a definite area sufficiently described to found a verdict upon the description.*" (Emphasis supplied.) See, also, *Pokorski v. McAdams*, 204 Neb. 725, 285 N.W.2d 824 (1979). Defendants contend that *Layher* does not require an exact legal description, but only requires "a description which is sufficient to found a verdict upon the description." Their implication, in our opinion, is not justified and would be inconsistent with the actual wording of the *Layher* opinion; for example, "exact property" and "definite area." The conjunctive wording of the language in *Layher*, to wit, "*and* that he occupied adversely a definite area sufficiently described to found a verdict upon," (emphasis supplied) clearly indicates that a description must not only be sufficient to found a verdict on but must also be "exact" and "definite." We also feel that defendants' reliance upon *Layher* is rather unusual, especially considering that *Layher* involved facts similar to those in the instant case, and in that case this court held that there was not a sufficient description in the record of the property involved.

Defendants also buttressed their argument for a less than exact description by the claim that although they cannot show the exact extent of the possession of their tenant because of an inability to locate the original fence, the present fence is located south of the original one, and therefore they claim there is no possibility that land not acquired by adverse possession would be granted to the defendants. This argument has only a superficial appeal. If accepted, the rule in *Layher* and *Pokorski* could be completely circumvented by showing that the ad-

verse claimant was only claiming less than he truly deserved. Such circumvention would certainly be inconsistent with the decision in *Pokorski*. In addition, we point out that the willingness of an adverse claimant to forgo part of his claim, or the inability to show the full extent of his claim, would at least raise some suspicion as to whether there was adverse possession.

Although we could, and do, dispose of this case on the ground of a lack of an adequate description of the property allegedly held under adverse possession, we also examine the evidence and law with regard to the claim of adverse possession on the part of the defendants and their lessee.

The law is well established in this state that one who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for a full period of 10 years. See, for example, *Berglund v. Sisler*, 210 Neb. 258, 313 N.W.2d 679 (1981); *Layher v. Dove*, *supra*; *Barnes v. Milligan*, 200 Neb. 450, 264 N.W.2d 186 (1978). In order to determine in the instant case whether Widger's possession was adverse, it is necessary to examine how the parties in question came to own their respective parcels.

Originally, both the north half of the north half and the south half of the north half of Section 4 were owned by Elmer Ellsworth Widger, Sr., the grandfather of Orville Widger. In his will Elmer Ellsworth Widger, Sr., devised the north half of the north half to Lizzie Widger, who was Orville Widger's stepgrandmother. He also left a life estate in the south half of the north half to Carl Orvil Widger, who was Orville Widger's father. After the death of Carl Orvil Widger the present owners, the defendants in this case, obtained title to the south half of the north half. Also, Russell Widger, the son of Lizzie Widger, obtained title to the north half of the north half after the death of his mother. Russell

Widger was a cousin of Orville Widger. Maridus and Terry Kinder, the children of Russell Widger, obtained title to the north half of the north half following the death of their father. The Kinders were the grantors in the deed of the property to Petsch; however, Russell Widger was apparently the last person to actually farm the ground before Petsch purchased it. We deem the evidence regarding the chain of title as set out above to be determinative, and it has the benefit of being based on relatively undisputed facts.

In support of their position, defendants invoke the rule that where a fence is constructed as the boundary line, although it is not the actual boundary line, and the parties claim ownership of land up to the fence for the uninterrupted statutory period, the parties gain title to such land by adverse possession. *Wiedeman v. James E. Simon Co., Inc.*, 209 Neb. 189, 307 N.W.2d 105 (1981); *Conkey v. Anderson Farms, Inc.*, 205 Neb. 708, 289 N.W.2d 541 (1980); *Shirk v. Schmunk*, 192 Neb. 25, 218 N.W.2d 433 (1974); *Plischke v. Jameson*, 180 Neb. 803, 146 N.W.2d 223 (1966). Defendants apparently ignore that part of the rule that states that the fence must be "constructed as the boundary line," as set out in *Wiedeman* and other cases cited above. It must be remembered that when the original fence was constructed, one man owned the land on both sides of the fence, thus casting serious doubt as to whether the fence was constructed as a boundary fence.

We acknowledge the rule that one can take possession of land under a mistaken idea of the true boundary line and still acquire it by adverse possession. *Cunningham v. Stice*, 181 Neb. 299, 147 N.W.2d 921 (1967). In other words, an adverse possessor can succeed in his claim even if he does not know he is occupying land not included in his deed or chain of title. *Converse v. Kenyon*, 178 Neb. 151, 132 N.W.2d 334 (1965). On the other hand, the rule is well established that if the adverse claimant is under no mis-

apprehension as to the location of the boundary line and does not occupy the land with the intent to own it, he will not be deemed to be an adverse possessor. For example, in *Barnes v. Milligan, supra,* the court used the adverse claimant's knowledge of the true boundary line as evidence that his claim was not adverse.

The common principle underlying these cases is intent to own the land. In Nebraska, intent to assert ownership of the property is a requirement of adverse possession even though, in most cases, it is inferred from the circumstances. *Barnes v. Milligan, supra.* Ordinarily, intent can best be determined by reference to the possessor's acts. *Berglund v. Sisler, supra; Nebraska State Bank v. Gaddis,* 208 Neb. 136, 302 N.W.2d 686 (1981). In fact, in most cases intent is simply inferred from the circumstances. *Barnes v. Milligan, supra.* See, also, *Barnes v. Milligan,* 196 Neb. 50, 241 N.W.2d 508 (1976).

The reason that defendants' argument regarding the construction of a fence on a mistaken boundary line is oversimplified in this case is that possession of land up to the fence only establishes defendants' intent to assert ownership, that is, possession up to the fence is a circumstance which allows the inference of intent. This, however, only satisfies one element of adverse possession. Intent satisfies the "hostile" or "adverse" requirement of adverse possession. An equally important element to be proved before title is gained through adverse possession is that the claimant must also show notice to the true owner. The notice requirement and intent requirement are independent; it is the nature of the hostile possession that constitutes the warning, i.e., notice, not the intent of the claimant when he takes possession. *Barnes v. Milligan, supra* 196; *Whaley v. Mingus,* 188 Neb. 351, 196 N.W.2d 516 (1972). More specifically, the acts of dominion over the land must be so open, notorious, and hostile as to put an ordi-

narily prudent person on notice that his lands are in the adverse possession of another. *Wiedeman v. James E. Simon Co., Inc., supra*; *Shirk v. Schmunk, supra*; *Whaley v. Mingus, supra*. As a practical matter, this only requires the adverse possessor to act like a true owner toward the land. In other words, it is enough if the land is used for the purposes for which it may by its nature be adapted. *Shirk v. Schmunk, supra*. It should be remembered that the principal utility of this evidence of ordinary use of the land is not to demonstrate the adverse possessor's subjective intent, but rather to demonstrate that the true owner had notice of the adverse claim; thus the proviso that it is enough "that the land be devoted to the ordinary uses of the adverse claimant *provided the uses are such as to put the true proprietor on notice.*" (Emphasis supplied.) *Weiss v. Meyer*, 208 Neb. 429, 433, 303 N.W.2d 765, 767 (1981).

If the instant case were based on the same type of facts as most mistaken boundary fence cases, we would have no trouble in finding the required notice under the facts of this case. In most cases the same facts which supply the inference of intent also serve to show notice, e.g., possession up to a fence constructed on a mistaken boundary. The facts in the case at bar do not do the same double duty. Certainly it is true that Widger's acts *against Petsch* were sufficient notice of adverse possession; indeed, that is the reason that Petsch brought this action. However, since Petsch had not been in possession of the property for a period of 10 years at the time of the trial, it is apparent that if Widger is to succeed, his acts must also have been sufficient notice either to his cousin, Russell Widger, or to his stepgrandmother, Lizzie Widger. A review of the record on these points is fatal to Widger's case.

It is well settled that possession of real estate by permission of the owner can never ripen into title by adverse possession unless the change of such posses-

sion has been brought home to the true owner. *Guynan v. Guynan*, 208 Neb. 775, 305 N.W.2d 882 (1981); *McDermott v. Boman*, 165 Neb. 429, 86 N.W.2d 62 (1957). This is so even where the original owner, who permitted the use, has devised the land to another, who simply continued to permit the use. See *Guynan v. Guynan, supra.*

It is also the rule that permission may be presumed under certain circumstances even though actual permission is not proved. For example, as between parties sustaining parental and filial relationships, the possession of land of one by the other is presumed to be permissive, not adverse. *Chase v. Lavelle*, 105 Neb. 796, 181 N.W. 936 (1921). See, also, *Larson v. Anderson*, 74 Neb. 361, 104 N.W. 925 (1905). Under the broad statement of the rule as set out in *Chase v. Lavelle, supra*, we believe the same rule would apply to more distant relationships such as between grandson and stepgrandmother, or between cousins. The language of *Chase* seems particularly relevant to the instant case: "We think that the evidence, perhaps, shows that he exercised such dominion over the land for about 12 years that, *as between strangers and under different circumstances*, would probably be sufficient to sustain his claim. But, when Anna Lavelle [the true owner] relinquished actual possession of this land, it was to her father, and he held it by her permission . . . . At any rate, her father's occupancy of the land was known to her and was by her permission. And the evidence pretty clearly indicates that Albert [the adverse possessor] practically succeeded to his grandfather's permissive occupancy. If so, such occupancy would not ripen into title, no matter how long continued, until actual notice was brought home to the owner that the possession was adverse." (Emphasis supplied.) *Id.* at 806-07, 181 N.W. at 939-40.

Even if the presumption of permissive possession were not appropriate in this case, there is still an alternative ground for our holding. Certainly when

the fence was constructed by Elmer Ellsworth Widger, Sr., it was not notice to himself that he was adversely possessing against himself. Carl Orvil Widger and Orville Widger both succeeded to Elmer Ellsworth Widger's interest in the property in much the same manner as Albert did to his grandfather's interest in *Chase*. Defendants would contend that once the whole north half was divided by Elmer Ellsworth Widger into the north half and the south half, the possession up to the fence by those in the south half became adverse.

We do not think that this action of dividing the north half, which action the adverse possessors in this case did not even cause to be done, should constitute a change of the possession to adverse possession sufficient to put the true owners on notice. After the division the fence stayed in the same place that it was before the division. Nor did Widger subsequently speak with the other owners about the boundary or order them off the adversely claimed property.

While it is probably true that the defendants have developed some reasonable expectations to the property, that alone cannot justify a verdict in their favor. Without notice to the owner of the north half of the north half, there could be no adverse possession. If the relationship of the former owners or the way the parties acquired their respective titles were different, a different result in this case might be proper. However, under the facts of the instant case, as set out in the record thereof, we conclude that there was no adverse possession.

A review of the record in this case has convinced us that not only was there a failure of proof as to the description of the particular property claimed to have been adversely possessed but also the evidence in the record has failed to establish adverse possession of the property by the defendants as against Petsch, although the burden of proving such adverse possession was on said defendants. For these rea-

sons, the judgment of the trial court must be, and hereby is, affirmed.

AFFIRMED.